EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| J.H.V.<br><br>Recurrida<br><br>v.<br><br>Negociado de la Policía de Puerto Rico<br><br>Peticionario | Certiorari<br><br>2025 TSPR 139<br><br>216 DPR ___ |
| D.J.C.M.<br><br>Recurrido<br><br>v.<br><br>Negociado de la Policía de Puerto Rico; Departamento de Seguridad Pública; Estado Libre Asociado de Puerto Rico<br><br>Peticionarios | |

Número del Caso: CC-2024-0732
            cons. con CC-2024-0773


Fecha:  12 de diciembre de 2025


**CC-2024-0732**

Tribunal de Apelaciones

     Panel III

Oficina del Procurador General:


     Hon. Fernando Figueroa Santiago
     Procurador General

     Hon. Omar Andino Figueroa
     Procurador General

     Lcda. Fabiola Sosa Baco
     Procuradora General Auxiliar

     Lcdo. Frank A. Rosado Méndez
     Procurador General Auxiliar

Representantes legales de la parte recurrida:

> Lcdo. Javier H. Jiménez Vázquez
> Lcdo. Osvaldo Sandoval Báez
> Lcdo. Efrén González González

**CC-2024-0773**

 Tribunal de Apelaciones

> Panel II

Oficina del Procurador General:

> Hon. Fernando Figueroa Santiago
> Procurador General
>
> Hon. Omar Andino Figueroa
> Procurador General
>
> Lcda. María Astrid Hernández Martín
> Procuradora General Auxiliar

Representante legal de la parte recurrida:

> Lcdo. Reinaldo J. Franqui Escandón

Materia: Derecho Administrativo – Elegibilidad  para obtener una licencia de armas ante la eliminación de delitos del Certificado de Antecedentes Penales; facultad del Negociado de la Policía para considerar las convicciones que fueron eliminadas de un expediente penal y que aparecen en los sistemas de búsqueda con el fin de revocar o denegar una licencia de arma de fuego.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

J.H.V.

    Recurrida

        v.

Negociado de la Policía de Puerto Rico

    Peticionario

_____

D.J.C.M.

    Recurrido

        v.

Negociado de la Policía de Puerto Rico; Departamento de Seguridad Pública; Estado Libre Asociado de Puerto Rico

    Peticionarios

CC-2024-0732

cons. con

CC-2024-0773

La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón emitieron la Opinión del Tribunal.

En San Juan, Puerto Rico, a 12 de diciembre de 2025.

    Con esta decisión se le brinda respuesta a ciertas interrogantes que se presentan con frecuencia en los tribunales de Puerto Rico. En particular, se logra aclarar si una persona que obtuvo la eliminación de ciertos delitos de su Certificado de Antecedentes Penales adviene automáticamente elegible para obtener una licencia de armas. A su vez, contestamos si el Negociado de la Policía puede considerar las convicciones que fueron eliminadas de

un expediente penal al amparo de la Ley Núm. 254-1974, *infra*, pero que aún aparecen en los sistemas de búsqueda a los que tiene acceso con el fin de revocar o denegar una licencia de arma de fuego.

Evaluemos este asunto en detalle.

**I**

**A.**

Surge de los autos del **Caso Núm. CC-2024-0732** que, el 11 de enero de 2018, la Sra. J.H.V. (señora J.H.V. o recurrida) presentó una Petición *Ex Parte* ante el Tribunal de Primera Instancia para solicitar la eliminación de sus antecedentes penales. Posteriormente, el foro primario emitió una Resolución en la que concedió la solicitud instada. En su dictamen, el foro *a quo* dispuso que la recurrida había satisfecho los requisitos legales aplicables y que, además, habían transcurrido más de cinco (5) años desde que cumplió las Sentencias emitidas en los casos siguientes:

Querella: 20103400000134
Ley: Art. 406 Ley 4-1971
Fecha hechos: 20/3/2010
Disposición final: Culpable, JSC2010G0244
Fecha disposición final: 8/11/2010

Querella: 19990505016838
Ley: Art. 258 CP (1974)
Fecha hechos: 31/10/1999
Disposición final: Culpable, IAP1999M3793 (NO figura EN RAMA JUDICIAL)
Fecha disposición final: 14/1/2000[1]

---

[1] Apéndice del Caso Núm. CC-2024-0732, pág. 78.

En vista de lo anterior, el Tribunal de Primera Instancia ordenó al Negociado de la Policía de Puerto Rico (Negociado de la Policía o peticionario) a eliminar las convicciones que aparecían en el Certificado de Antecedentes Penales de la señora J.H.V. De igual forma, le requirió al Director de Informática de la Oficina de Administración de los Tribunales que suprimiera la información del Portal Electrónico de Consulta de Casos del Poder Judicial.

Posteriormente, el 12 de enero de 2022, el Negociado de la Policía expidió una licencia de armas a favor de la señora J.H.V. Sin embargo, a principios de septiembre de ese mismo año, la licencia y el arma de fuego de la recurrida fueron ocupadas como parte de la radicación de cargos y la expedición de una Orden de Protección en su contra al amparo de la Ley Núm. 54-1989, según enmendada, conocida como *Ley para la Prevención e Intervención con la Violencia Doméstica*, 8 LPRA sec. 601 *et seq.* (Ley Núm. 54-1989).

Días luego, la Orden de Protección fue archivada por desistimiento voluntario del solicitante. A su vez, el Tribunal de Primera Instancia ulteriormente emitió una Orden mediante la cual ordenó al peticionario que le devolviera a la señora J.H.V. el arma de fuego, fundamentándose en lo dispuesto en el Art. 2.13 de la Ley Núm. 168-2019, según enmendada, conocida como *Ley de Armas*

*de Puerto Rico de 2020*, 25 LPRA sec. 462l (Ley Núm. 168-2019).

No empece a lo anterior, el Negociado de la Policía remitió un comunicado a la recurrida informándole que revocaba su licencia de armas al amparo del Art. 2.09 de la Ley Núm. 168-2019, *supra*. En su misiva, la agencia administrativa indicó que una investigación realizada había arrojado un desenlace desfavorable en su contra, pues resultó que no cumplía con los requisitos para poseer un arma de fuego. En particular, se desprende de la documentación que la agente investigadora tomó en cuenta la convicción previa que tenía la señora J.H.V. bajo la Ley Núm. 4-1971, según enmendada, conocida como *Ley de Sustancias Controladas de Puerto Rico*, 24 LPRA sec. 2101 et *seq*.

Insatisfecha, la recurrida solicitó una Vista Administrativa. Tras llevarse a cabo dicho proceso, el 5 de junio de 2024, el peticionario notificó una Resolución mediante la cual proveyó No Ha Lugar a la solicitud de la señora J.H.V. y ordenó que no se devolviera a esta la licencia de arma que le fue ocupada. Al así hacerlo, aludió al Art. 2.09 de la Ley Núm. 168-2019, *supra*, e hizo constar las determinaciones de hechos siguientes:

1. Surge de expediente que para la fecha del 9/1/2022, la [señora J.H.V.] fue arrestada por Ley 54 caso consultado con la fiscal Daphne Franco quien indicó radicar cargos ante el juez José Caballero del Tribunal de Fajardo, determinando causa y fijando fianza de $4,500 la cual prestó. Le fue ocupada el arma

registrada y la licencia de Portación de Armas con detalles en querella 2022-12-019-01090.

2. Surge de la investigación realizada por la Agte. Dimarie [Á]lvarez Burgos 19112, agente investigadora de la División de Armas e Inspección de Armerías y Polígonos que la [señora J.H.V.] en la búsqueda en los Sistemas de la Policía de Puerto Rico presenta acusación y convicción para el año 2010 por la Ley 404 [sic.] "Sustancias Controladas" (delito grave), por lo cual cumplió dos años de probatoria[,] información que la [señora J.H.V.] marcó en la negativa en el formulario de Entrevista al Ciudadano Investigado, recomendando desfavorable al no cumplir con los requisitos establecidos en ley.

3. Surge del expediente orden de protección OPA-2022-027132 expedida el 2 de septiembre de 2022 con vigencia hasta el 15 de septiembre de 2022 por el juez José A. Caballero López donde la parte peticionada es la [señora J.H.V.].

4. Surge de la vista administrativa Resolución sobre Archivo que la referida orden expedida por la juez Annette Marie Santiago Díaz por desistimiento voluntario de la [señora J.H.V.] con fecha del 15 de septiembre de 2022.[2]

Inconforme, la señora J.H.V. solicitó reconsideración. Explicó que en la Vista Administrativa había demostrado que llevó a cabo un proceso para eliminar sus antecedentes penales y que, de conformidad con lo resuelto por este Tribunal en *Muñoz, Torres v. Superintendente*, 125 DPR 603 (1990), tales convicciones no podían ser tomadas en cuenta para determinar si tenía derecho o no a poseer un arma de fuego. No obstante, su solicitud de reconsideración no fue atendida por la agencia administrativa dentro del término estatuido, por lo que recurrió al Tribunal de Apelaciones mediante un *Recurso de Revisión*.

---

[2] Íd., págs. 110-111.

Tras evaluar la oposición del Negociado de la Policía y examinar la copia certificada del expediente administrativo, la transcripción de la grabación de la Vista y los documentos anejados al recurso ante su consideración, el 1 de octubre de 2024 el Tribunal de Apelaciones notificó una Sentencia en la que decidió revocar la Resolución del ente administrativo y ordenó la devolución de la licencia de armas a la señora J.H.V.

En su dictamen, el foro apelativo intermedio concluyó que la decisión del Negociado de la Policía no estaba basada en el expediente. Según dicho foro, el ente administrativo no podía tomar en cuenta las acusaciones penales previas de la recurrida al amparo de lo resuelto en *Muñoz, Torres v. Superintendente*, *supra*. Además, entendió que el hecho de que las convicciones de la señora J.H.V. aparecieran en los sistemas revisados por la agencia era un asunto jurídicamente inconsecuente, pues se trataba de un error administrativo, lo que no impedía su corrección. De acuerdo con el Tribunal de Apelaciones, la situación de este caso era una muy parecida a la atendida por este Foro en *Pueblo v. Ortiz Martínez*, 123 DPR 820, 832 (1989), en donde se expresó que "no puede darse la anomalía de que mientras de un lado el [Comisionado del Negociado de la Policía] certifica negativamente, por otro lado[,] el tribunal acud[e] a sus archivos para resucitar esas convicciones". Así pues, según el tribunal, carecería de propósito que el legislador hubiese autorizado la

eliminación de los antecedentes penales, si todavía estos podían ser utilizados por el Negociado de la Policía para, entre otras cosas, denegar la expedición de una licencia de armas.

En desacuerdo con el revés judicial, el Negociado de la Policía solicitó reconsideración. No obstante, su petición fue denegada, por lo que el 18 de noviembre de 2024, este acudió ante nos mediante un recurso de *certiorari* en el que le imputó al Tribunal de Apelaciones haber incurrido en el error siguiente:

> Erró el Tribunal de Apelaciones al ordenar la devolución de la licencia de armas de la señora [J.H.V.] basándose en unas expresiones emitidas en los casos *Pueblo v. Ortiz Martínez*, 123 DPR 820 (1989) y *Muñoz, Torres [v. Superintendente Policía]*, 125 DPR 603 (1990), sin considerar el andamiaje estatutario actual, específicamente, la prohibición del Artículo 2.09 y el mandato del Artículo 2.02(d)(3) y (4) de la Ley Núm. 168-2019 que requiere al Negociado verificar los archivos digitales a los que tiene acceso.

**B.**

Por otra parte, en el **Caso Núm. CC-2024-0773**, el Sr. D.J.C.M. (señor D.J.C.M. o recurrido) presentó una *Solicitud de Licencia de Armas* ante el Negociado de la Policía, la cual fue denegada el 1 de junio de 2023 por incumplir con los requisitos dispuestos en el Art. 2.02(d)(3) de la Ley Núm. 168-2019, *supra*.[3] Inconforme con esta determinación, el recurrido solicitó

---

[3] Apéndice del Caso Núm. CC-2024-0773, pág. 68.

reconsideración, pero su petición no fue atendida por el peticionario.

A raíz de ello, el 19 de septiembre de 2023, el señor D.J.C.M. presentó ante el Tribunal de Primera Instancia un escrito de *Revisión de Decisión Administrativa*, en el cual indicó que la decisión de denegar la expedición de la licencia de armas era incorrecta, pues entendía que cumplía con los requisitos necesarios para obtenerla. Adujo, además, que contaba con un Certificado de Antecedentes Penales negativo, de modo que sus condenas previas no podían tomarse en cuenta al evaluarse su solicitud.[4]

Tras varias incidencias procesales y la celebración de una Vista en su fondo, el 27 de marzo de 2024, el foro primario emitió una Resolución, en la que proveyó No Ha Lugar al recurso instado por el recurrido. El tribunal entendió, entre otras cosas, que el Negociado de la Policía había actuado correctamente al denegar la licencia de armas al señor D.J.C.M. debido a que este fue convicto por delitos graves. El 12 de abril de 2024, el recurrido presentó una *Moción de Reconsideración de Resolución*, pero su solicitud fue denegada mediante una Orden dictada el 26 de abril de 2024.

En desacuerdo con la *Orden* del Tribunal de Primera Instancia, el señor D.J.C.M. acudió ante el foro apelativo intermedio mediante una *Apelación Civil*. En

---

[4] Íd., pág. 115.

términos generales, indicó que, contrario a lo resuelto por el peticionario, entendía que cumplía con los requisitos necesarios para obtener una licencia de armas, pues si bien no negaba haber sido convicto por delitos graves, un tribunal con competencia había ordenado la eliminación de tales condenas de su expediente criminal.[5] El recurrido también alegó que el Negociado de la Policía excedió sus facultades al imponer requisitos adicionales a los establecidos en la Ley Núm. 168-2019, *supra*, y al omitir celebrar una Vista dentro del término dispuesto para ello en el mencionado estatuto. Así pues, solicitó la revocación de la determinación del foro primario y que se ordenara al peticionario expedir una licencia de armas a su favor.

Por su parte, el 3 de julio de 2024, el Negociado de la Policía presentó un *Alegato*, en el cual solicitó la confirmación del dictamen emitido por el Tribunal de Primera Instancia. Expuso que no tenía facultad para conceder una licencia de armas si el solicitante había sido convicto por cualquiera de los delitos establecidos en el Art. 2.09 de la Ley Núm. 168-2019, *supra*. Asimismo, arguyó que el señor D.J.C.M. no cumplía con los requisitos para tener una licencia de armas debido a que fue convicto por delitos graves. De igual forma, argumentó que el hecho de que se eliminara una condena del Certificado de Antecedentes Penales no le privaba de

---

[5] Íd., págs. 68, 116-117.

su facultad para denegar una licencia de armas por incumplimiento con los requisitos de ley.

El 20 de septiembre de 2024, el Tribunal de Apelaciones emitió una Sentencia mediante la cual revocó la determinación del foro primario y ordenó que se expidiera la licencia de armas a favor del recurrido. El foro apelativo intermedio entendió que tras eliminarse de su Certificado de Antecedentes Penales los delitos por los que fue convicto, la información sobre estos carecía de eficacia jurídica, por lo que tenía que darse por no puesta. El Tribunal de Apelaciones sostuvo que en el momento en que el señor D.J.C.M. presentó su solicitud para obtener la licencia de armas, contaba con un Certificado de Antecedentes Penales negativo y los delitos por los cuales resultó convicto no se encontraban entre los fundamentos para que el peticionario pudiera rehusar expedir una licencia de armas. Consistente con esto, el foro apelativo intermedio basó su determinación en lo resuelto en *Muñoz, Torres v. Superintendente Policía*, *supra*, y en *Rivera Pagán v. Supte. Policía de P.R.*, 135 DPR 789 (1994).

En desacuerdo con el Tribunal de Apelaciones, el 8 de octubre de 2024, el Negociado de la Policía presentó una *Solicitud de reconsideración*. En síntesis, expuso que la licencia de armas solicitada por el recurrido fue denegada por mandato legislativo, pues la propia Ley Núm. 168-2019, *supra*, prohíbe que una persona que fue convicta

de un delito grave o de su tentativa pueda beneficiarse de tener dicha licencia. El peticionario reafirmó que la eliminación de delitos del expediente criminal no derrota su facultad para denegar una licencia de armas por incumplimiento con los requisitos de ley. Además, enfatizó que el espíritu que inspiró el estatuto para la eliminación de antecedentes penales fue lograr la rehabilitación mediante empleo o autogestión, mas no para obligarle a conceder una licencia de armas a una persona que haya sido convicta de delito grave o su tentativa. De conformidad con lo anterior, el Negociado de la Policía expuso que, a pesar de que las condenas por delitos graves del señor D.J.C.M. fueron eliminadas de su expediente criminal, a la luz de lo que pudo encontrar en las bases de datos de la agencia, el recurrido no cumplía con todos los requisitos para ser acreedor de una licencia de armas.

El 10 de octubre de 2024, el foro apelativo intermedio proveyó No Ha Lugar a la *Solicitud de reconsideración* presentada por el peticionario. Así pues, el 10 de diciembre de 2024, el Negociado de la Policía acudió ante este Foro mediante un recurso de *certiorari*, en el que señaló el error siguiente:

> Erró el Tribunal de Apelaciones al revocar la decisión del Tribunal de Primera Instancia y ordenar se emita una licencia de armas a favor del recurrido fundamentándose en unas expresiones emitidas en los casos *Muñoz, Torres* [*v. Superintendente Policía*], 125 DPR 603 (1990) y *Rivera Pagán v. Supte. Policía* [*de P.R.*], 135 DPR 789 (1994) sin considerar el estado de derecho

actual, específicamente, la prohibición del Artículo 2.09 y el mandato del Artículo 2.02(d)(3) y (4) de la Ley Núm. 168-2019 que requiere al Negociado de la Policía de Puerto Rico verificar los archivos digitales a los que tiene acceso.

## C.

El 11 de julio de 2025, estando ambos recursos sometidos para adjudicación, la señora J.H.V presentó una *Moción solicitando* [la] *consolidación* del **Caso Núm. CC-2024-0732** con el **Caso Núm. CC-2024-0773.** Según indicó, estos recursos plantean cuestiones de derecho comunes entre ellos. Así pues, en vista de que entendemos que la recurrida tiene razón en su planteamiento concedemos dicha petición y, en consecuencia, consolidamos los recursos de epígrafe.

Contando con la comparecencia de las partes, y habiéndose expedido los autos, nos encontramos en posición de resolver.

## II

### A. Revisión Judicial de Decisiones Administrativas

En nuestro ordenamiento jurídico, el derecho administrativo está basado en una actitud de amplia consideración de parte de los tribunales a las decisiones que emiten las agencias administrativas. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Esto, debido a la pericia que estos organismos poseen en los asuntos que se le han delegado por legislación. *ECP Incorporated v. OCS*, 205 DPR 268, 281 (2020); *Graciani Rodríguez v. Garage Isla Verde*,

202 DPR 117, 126-127 (2019). Por lo cual, los procesos administrativos y las determinaciones de hechos de las agencias están cobijados de una presunción de regularidad y corrección. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011); *Vélez v. A.R.Pe.*, *supra*, pág. 693. Sin embargo, los tribunales no pueden, so pretexto de deferencia, imprimirle un sello de corrección a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Super Asphalt v. AFI y otro*, *supra*, pág. 819; *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).

Así pues, en cuanto al alcance de la revisión judicial de las decisiones administrativas, la Sección 4.5 de la Ley Núm. 38-2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (Ley Núm. 38-2017) establece al respecto lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. 3 LPRA sec. 9675.

De conformidad con esto, las determinaciones de hechos deben ser sostenidas siempre que estén basadas en evidencia sustancial que surja del expediente administrativo. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018). En

ese sentido, evidencia sustancial implica aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener cierta conclusión. Íd.; *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020) (citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004)). En cuanto a las determinaciones de derecho, recientemente en *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR __ (2025) reiteramos que los tribunales tienen que revisar las mismas en todos sus aspectos. Es decir, si bien los foros judiciales pueden apoyarse y utilizar como referencia las interpretaciones que hagan las agencias administrativas de los estatutos que estas administran, no pueden concederles deferencia automática a tales conclusiones de derecho. Esto pues, la interpretación de las leyes es una tarea inherentemente judicial.

**B. Derecho constitucional a poseer y portar armas**

La Segunda Enmienda de la Constitución de los Estados Unidos dispone que "[a] well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." Emda. II, Const. EE. UU., LPRA, Tomo 1, ed. 2023, pág. 186. Mediante la Decimocuarta Enmienda de la Carta de Derechos ("*Bill of Rights*") de la Constitución federal, el Tribunal Supremo de los Estados Unidos ha extendido a los estados los derechos fundamentales allí consagrados a través de la doctrina de incorporación selectiva. *Pueblo v. Rodríguez López*

*et al.*, 210 DPR 752, 766 (2022); *McDonald v. Chicago*, 561 US 742, 750, 763, 765 y 791 (2010). Así pues, siendo el derecho a poseer y portar armas uno individual de carácter fundamental, aplica a los estados y, por ende, a Puerto Rico. *Pueblo v. Rodríguez López et al.*, *supra*, pág. 766.

En *District of Columbia v. Heller*, 554 US 570 (2008), la Corte Suprema de los Estados Unidos interpretó el alcance de la Segunda Enmienda de la Constitución federal. *Íd.*, pág. 767. A esos fines, evaluó la constitucionalidad de una disposición de la Ley de Armas del Distrito de Columbia que prohibía, de manera absoluta, la posesión de armas cortas en el hogar. *Íd.* En particular, el estatuto en cuestión prohibía el registro de armas cortas y exigía que cualquier arma en el hogar estuviese desmontada, descargada o restringida por un seguro para el gatillo ("*trigger lock*") o dispositivo similar, lo que la hacía inoperable. *Íd.*; *District of Columbia v. Heller*, *supra*, págs. 574-575 y 628. Al examinar el texto de la Segunda Enmienda, el Tribunal Supremo federal sostuvo que el mismo garantiza un derecho individual que permite a los ciudadanos respetuosos de la ley poseer y portar armas de fuego para su defensa. *Íd.*, págs. 576-582 y 635.

**Sin embargo, tal y como ocurre con otros derechos fundamentales, dicho derecho no es ilimitado ni absoluto, ya que el estado puede regularlo**. *Íd.*, págs. 626-627. En

lo que se ha interpretado como una limitación razonable del derecho a poseer y portar armas, en *District of Columbia v. Heller*, *supra*, el Máximo Foro de los Estados Unidos dispuso expresamente lo siguiente:

> Like most rights, the right secured by the Second Amendment is not unlimited. […] Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, **nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.** (Negrillas suplidas). Íd., págs. 626-627.

Cabe señalar que el Tribunal Supremo de los Estados Unidos aclaró que los mencionados ejemplos no constituyen una lista exhaustiva de la forma en que los gobiernos pueden regular el derecho a poseer y portar armas de fuego ("[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). Íd., pág. 627 esc. 26.

Dos (2) años más tarde, el Tribunal Supremo federal resolvió el caso de *McDonald v. Chicago*, *supra*. Allí, concluyó que el derecho fundamental a poseer y portar armas es extensivo a los estados por medio de la Cláusula del Debido Proceso de Ley de la Decimocuarta Enmienda de la Constitución de los Estados Unidos. Específicamente, el Foro *a quo* determinó lo siguiente:

> We have previously held that most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States. Applying the standard that is well established in our case law, **we hold that the**

**Second Amendment right is fully applicable to the States.** (Negrillas suplidas). Íd., pág. 750.

En este caso, al igual que ocurrió en *District of Columbia v. Heller*, *supra*, el Tribunal Supremo federal sostuvo que el derecho fundamental a poseer y portar armas no es ilimitado. En específico, dispuso lo siguiente:

> Under our precedents, if a Bill of Rights guarantee is fundamental from an American perspective, then, unless *stare decisis* counsels otherwise, that guarantee is fully binding on the States **and thus *limits* (but by no means eliminates) their ability to devise solutions to social problems that suit local needs and values.**
>
> […]
>
> It is important to keep in mind that Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that **the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. We repeat those assurances here.** Despite municipal respondents' doomsday proclamations, **incorporation does not imperil every law regulating firearms.** (Negrillas suplidas y citas omitidas). *McDonald v. Chicago*, *supra*, págs. 784-786.

En el 2022, el Máximo Foro federal resolvió el caso de *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Allí, extendió el derecho a poseer y portar armas de fuego para defensa propia **fuera del hogar o en espacios públicos,** y aclaró el estándar legal que deben emplear los tribunales al enfrentarse a

un planteamiento en el que se impugne una regulación o se limite el derecho protegido por la Segunda Enmienda. Íd., págs. 2125-2131. En esa línea, el Tribunal Supremo de los Estados Unidos determinó que los gobiernos o estados pueden limitar el derecho a poseer y portar armas de fuego siempre y cuando cumplan con el estándar de "*text-and-history test*". Íd.

Este esquema sugiere que:

[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command. Íd., pág. 2126.

Tal y como discutiéramos en *Pueblo v. Rodríguez López et al.*, *supra*, al analizar el estándar de referencia, el estado "deberá establecer que existe un entendido histórico que hace permisible la regulación o limitación que se impugna". Íd., pág. 776. Así, de encontrarnos ante tal escenario, corresponde evaluar si las regulaciones modernas e históricas imponen una carga comparable sobre el derecho fundamental a poseer y portar armas para defensa propia, y si dicha carga está igualmente justificada. Íd. Se trata, pues, de realizar un análisis histórico y de razonamiento analógico mediante el cual identifiquemos una analogía bien

establecida e históricamente representativa. Íd., pág. 777. Esto no implica que debamos identificar disposiciones legales idénticas, sino que sean suficientemente análogas como para superar el examen constitucional. Íd.

Después de lo decidido por el Máximo Foro federal en *New York State Rifle & Pistol Assn., Inc. v. Bruen*, *supra*, este Tribunal resolvió el caso de *Pueblo v. Rodríguez López et al.*, *supra*. Allí, nos enfrentamos a una controversia en la que se cuestionó la constitucionalidad del Art. 5.04 de la derogada Ley Núm. 404-2000, conocida como *Ley de Armas de Puerto Rico de 2000*, 25 LPRA ant. sec. 458c (Ley Núm. 404-2000). Íd., pág. 757. En específico, se argumentó que la exigencia de una licencia para poseer y portar armas es inconstitucional por contravenir la Segunda Enmienda de la Constitución de Estados Unidos, así como su jurisprudencia interpretativa. Íd., págs. 758 y 779. Tras aplicar el estándar adoptado en *New York State Rifle & Pistol Assn., Inc. v. Bruen*, *supra*, determinamos que, a pesar de que el Art. 5.04 de la Ley Núm. 404-2000, *supra*, parecería una limitación al derecho prescrito en el texto de la Segunda Enmienda federal, la misma supera el escrutinio judicial requerido del "*text-and-history test*". Íd., pág. 780. En esa línea, resaltamos que el requisito de una licencia para poseer y portar armas, **"which often require applicants to undergo a background**

**check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens."** (Negrillas en el original). Íd. (citando a *New York State Rifle & Pistol Assn., Inc. v. Bruen*, *supra,* esc. 9). Consecuentemente, en *Pueblo v. Rodríguez López et al.*, *supra*, pág. 780, concluimos que la exigencia de una licencia para poseer y portar armas en Puerto Rico "sólo persigue la política pública de cero tolerancia contra el crimen, lograr que las agencias de orden público sean más efectivas en esa lucha y promover mayor seguridad y bienestar público para el Pueblo". Por tanto, sostuvimos la constitucionalidad del Art. 5.04 de la Ley Núm. 404-2000, *supra*.

En el 2024, el Tribunal Supremo de los Estados Unidos resolvió el caso de *US v. Rahimi*, 602 US 680 (2024). Así pues, tras aplicar el estándar de "*text-and-history test*", el Foro aludido dispuso que, cuando un tribunal determina que una persona representa una amenaza creíble para la seguridad física de otra, dicha persona puede ser desarmada temporeramente sin que ello contravenga la Segunda Enmienda de la Constitución federal. Íd., págs. 680 y 702.

**C. Ley de Armas de Puerto Rico**

La Ley Núm. 168-2019, *supra*, se aprobó con el objetivo de salvaguardar y proteger los derechos de los ciudadanos americanos residentes en Puerto Rico. Así, se dejó claro

que el portar y poseer armas en esta jurisdicción es un derecho fundamental e individual como en los Estados Unidos. Exposición de Motivos de la Ley Núm. 168-2019 (2019 [Parte 3] Leyes de Puerto Rico 2125-2126). Ahora bien, al igual que la legislación previa, la Ley Núm. 168-2019, *supra*, impone ciertos requisitos para obtener una licencia de armas. En específico, el Art. 2.02(a) dispone que la Oficina de Licencias de Armas del Negociado de la Policía expedirá la licencia a toda persona que demuestre cumplir con los criterios siguientes:

(1) Haber cumplido veintiún (21) años de edad; o haber cumplido dieciocho (18) años de edad y haber juramentado como integrante del Negociado de la Policía, Policía Municipal u Oficial de Custodia del Departamento de Corrección.

**(2) Tener un expediente negativo de antecedentes penales y no encontrarse acusado y pendiente o en proceso de juicio por algunos de los delitos enumerados en la sec. 462h de este título o sus equivalentes, tanto en Puerto Rico, como en cualquier jurisdicción de Estados Unidos, a nivel federal o en cualquier país extranjero.**

(3) No ser adicto a sustancias controladas o ebrio habitual.

(4) No estar declarado incapaz mental por un tribunal con jurisdicción.

(5) No haber sido separado de manera deshonrosa de las fuerzas armadas, de alguna agencia del orden público o por algunos de los delitos enumerados en la sec. 462h de este título o sus equivalentes, tanto en Puerto Rico, como en cualquier jurisdicción de Estados Unidos, o por el uso indebido de su arma de fuego.

(6) No incurrir ni pertenecer a organizaciones que incurran en actos de violencia o dirigidos al derrocamiento del gobierno constituido.

(7) No estar bajo una orden del tribunal, o haber estado en cualquier momento durante los pasados

doce meses previos a la fecha de solicitud, que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, algún familiar de este o a persona alguna.

(8) Ser ciudadano o residente legal de Estados Unidos de América.

(9) No ser persona impedida por el 'Federal Gun Control Act of 1968' a recibir, transportar o enviar armas de fuego o municiones. (Negrillas suplidas). 25 LPRA sec. 462a.[6]

Además, radicada una solicitud para la obtención de una licencia de armas, esa Oficina tiene que cotejar electrónicamente el expediente de antecedentes penales del o la solicitante. Al respecto, el Art. 2.02(d) dispone que:

(1) […] Recibido el pago por los derechos y los documentos, debidamente cumplimentados, se procederá de inmediato a realizar el cotejo electrónico, sobre el expediente negativo de antecedentes penales del peticionario.

[…]

(3) A partir de que se acepte la solicitud para la expedición de una licencia de armas, **la Oficina de Licencias de Armas, determinará y certificará por escrito si el peticionario cumple o no, con los requisitos establecidos en este capítulo para la expedición de la licencia de armas. Esto deberá lograrse mediante una investigación en los archivos digitales de cualquier agencia gubernamental de Puerto Rico, de Estados Unidos o cualquier subdivisión política de este, de cualquier entidad extranjera o internacional a la que pueda tener acceso, incluyendo los archivos del National Crime Information Center (NCIC),[7] del National Instant**

_____

[6] Por otro lado, el inciso (c) del Art. 2.02 de la Ley Núm. 168-2019, según enmendada, conocida como _Ley de Armas de Puerto Rico de 2020_, 25 LPRA sec. 462a (Ley Núm. 168-2019), requiere que la solicitud para la expedición de una licencia de armas esté acompañada de un Certificado de Antecedentes Penales negativo expedido no más de treinta (30) días previos a la fecha de la solicitud.

[7] El _National Crime Information Center_ (NCIC) es el sistema de información computadorizada de justicia criminal establecido por el FBI como un servicio para las agencias de orden público federales y estatales. Art. 1.02 de la Ley Núm. 168-2019, 25 LPRA sec. 461a(y).

**Criminal Background Check System (NICS),[8] el Sistema de Información de Justicia Criminal (SIJC-PR)[9] y el Registro Criminal Integrado (RCI).[10]**

**(4) De resultar la investigación realizada por la Oficina de Licencias de Armas de los archivos digitales en una determinación de que la persona no cumple con todos los requisitos establecidos en este capítulo, no le será concedida la licencia de armas,** pero sin menoscabo a que el peticionario pueda solicitarla nuevamente en un futuro. […] (Negrillas suplidas). 25 LPRA sec. 462.[11]

Por otro lado, el Art. 2.09 de la Ley Núm. 168-2019, *supra*, establece que la Oficina de Licencias de Armas rehusará expedir o, de haber expedido revocará, una licencia de armas a:

cualquier persona que haya sido convicta, en Puerto Rico, en cualquier otra jurisdicción estadounidense de cualquier delito grave o su

---

[8] El *National Instant Criminal Background Check System* (NICS) es el sistema de información computadorizada administrado por el FBI, el cual todo armero debe contactar o acceder para solicitar información sobre si una persona puede o no poseer un arma. Íd., 25 LPRA sec. 461a(z).

[9] El *Sistema de Información de Justicia Criminal* (SIJC-PR) es el ente encargado de proveer información de naturaleza penal completa y correcta a los integrantes del Comité Intergubernamental del SIJC-PR. Arts. 3(a) y (b) y 4 de la Ley Núm. 143-2014, según enmendada, conocida como *Ley del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad del [G]obierno de Puerto Rico y del Sistema de Información de Justicia Criminal*, 4 LPRA secs. 533a y b.

[10] El *Registro Criminal Integrado* (RCI) es un sistema de información computarizado del Departamento de Justicia de casos criminales activos en el tribunal, órdenes de protección y órdenes de arresto expedidas por determinaciones de causa para arresto por la Junta de Libertad bajo Palabra. Art. 1.02 de la Ley Núm. 168-2019, 25 LPRA sec. 461a(hh).

[11] Cabe añadirse que, de presentarse alguna querella en contra de la persona con licencia de armas por proveer información presuntamente falsa, el inciso (8) del Art. 2.02(d) de la Ley Núm. 168-2019, *supra*, autoriza al Comisionado del Negociado de la Policía a realizar las investigaciones que estime pertinentes. Si después de realizada la investigación resultara que el poseedor de la licencia de armas ha dado información falsa a sabiendas en su solicitud o que no cumple con los requisitos establecidos en Ley Núm. 168-2019, *supra*, el Comisionado del Negociado de la Policía procederá de inmediato a la revocación e incautación de la licencia de armas y de todas las armas de fuego y municiones que este posea.

**tentativa**, por delito menos grave que conlleve violencia, por conducta constitutiva de violencia doméstica, según tipificada en las secs. 601 et seq. de Título 8, o conducta constitutiva de acecho, según tipificada en las secs. 4013 a 4026 del Título 33, ni por conducta constitutiva de maltrato de menores, según tipificada en las secs. 1101 et seq. del Título 8, 'Ley para la Seguridad, Bienestar y Protección de Menores'. En aquellos casos donde la licencia de armas sea revocada, el Comisionado procederá a ocupar las armas de fuego y/o municiones que posea la persona con licencia de armas. […] Tampoco se expedirá licencia alguna a una persona declarada incapaz mental, ebrio habitual o adicto al uso de sustancias controladas por un tribunal con jurisdicción ni a persona alguna que haya sido separada bajo condiciones deshonrosas de las Fuerzas Armadas de Estados Unidos, ni a ninguna persona que haya sido convicta por alguna violación a las disposiciones de este capítulo o de las anteriores leyes de armas; o se revocará la licencia expedida si la persona adviniera cualquiera de estas circunstancias. (Negrillas suplidas). 25 LPRA 462h.

### D. Eliminación de Antecedentes Penales

Ahora bien, la Ley Núm. 254 de 27 de julio de 1974, según enmendada, conocida como *Ley para Autorizar a la Policía de Puerto Rico la Expedición de Certificados de Antecedentes Penales*, 34 LPRA sec. 1725 *et seq.* (Ley Núm. 254-1974) fue aprobada con el propósito de conferirle al Negociado de la Policía el poder expreso de expedir Certificaciones de Antecedentes Penales y promulgar normas y regulaciones relacionadas a ese asunto. Exposición de Motivos de la Ley Núm. 254-1974 (1974 [Parte 2] Leyes de Puerto Rico 280-281). Además, mediante este estatuto se estableció un procedimiento a ser utilizado por las personas que deseen eliminar convicciones de sus expedientes penales y se aclaró que "la misión del

Certificado de Antecedentes Penales es informar sentencias condenatorias y no meras denuncias". Íd.

En lo concerniente, el Art. 4 de la Ley Núm. 254-1974, *supra*, contempla que toda persona que hubiese sido convicta de un delito grave y no esté sujeta al Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores, ni al Registro de Personas Convictas por Corrupción, puede solicitarle al Tribunal de Primera Instancia que emita una Orden a los efectos de eliminar sus convicciones del Certificado de Antecedentes Penales, siempre que demuestre lo siguiente:

> (a) Que hayan transcurrido cinco (5) años desde que cumplió la sentencia y durante ese tiempo no haya cometido delito alguno;
>
> (b) que tenga buena reputación en la comunidad, y
>
> (c) que se haya sometido a la muestra requerida por la Ley del Banco de Datos de ADN, secs. 4001 a 4012 de este título, de estar sujeta a ello. 34 LPRA sec. 1725a-2.

En estos casos, la persona solicitante debe acompañar los documentos necesarios para probar las alegaciones de su petición. Por su parte, el Ministerio Público tiene la facultad de oponerse o allanarse, siendo innecesaria la celebración de una vista en ese último escenario.

## E. Recuperación del Derecho a Poseer Armas de Fuego

En el ámbito federal, el *Gun Control Act of 1968* (*Gun Control Act*) prohíbe la posesión de un arma de fuego en determinadas circunstancias, incluyendo aquellas en que una persona es condenada por un tribunal estatal o federal de cometer un delito que conlleve pena de prisión por un

término mayor a un año o de un delito menos grave de violencia doméstica. 18 USCA secs. 922(g)(1)&(9). No obstante, las personas convictas a nivel estatal pueden evitar las prohibiciones contenidas en la Sección 922(g)(1)&(9) del *Gun Control Act* si sus condenas son perdonadas, anuladas o eliminadas o si sus derechos civiles son restaurados por el Estado.[12] Véase, 18 USCA sec. 921(a)(20)&(a)(33)(B). Esto, a menos que dicho indulto, eliminación de convicción o restauración de derechos civiles disponga expresamente que no se le permite enviar, transportar, poseer o recibir armas de fuego.[13] Íd. Por el contrario, en el caso de convictos federales, el Gobierno Federal es quien tiene que perdonar, anular o eliminar las condenas o restaurar los derechos civiles de estos para que entonces puedan beneficiarse de lo dispuesto en la Sección 921(a)(20)&(a)(33)(B) del *Gun Control Act*.[14]

Así las cosas, muchos Estados han implantado estatutos con procedimientos especiales que viabilizan que las personas recuperen el derecho a poseer un arma de fuego.[15] Entre estos, podemos encontrar el requisito de obtener un indulto, cumplir con un proceso de eliminación de

---

[12] *Expungement and civil rights restoration*, Federal Crimes Sec. 28:4 (2024 ed.).

[13] Íd. En cuanto a ese aspecto, véase también: *Caron v. U.S.*, 524 US 308 (1998).

[14] *Beecham v. U.S.*, 511 US 368 (1994). Véase, además, lo dispuesto en: *Logan v. U.S.*, 552 US 23 (2007).

[15] David T. Hardy, *Losing and Regaining Firearm Rights: A Guide for the Legal Practitioner*, 16 T.M. Cooley J. Prac. & Clinical L. 133, 139 (2014).

antecedentes penales o conseguir una orden judicial al respecto.[16]

En Puerto Rico, si bien la Ley Núm. 254-1974, *supra*, permite la eliminación de condenas del Certificado de Antecedentes Penales, tanto esta como la Ley Núm. 168-2019, *supra*, guardan silencio en torno a si tal eliminación concede el derecho a obtener una licencia de armas. Sobre ese aspecto, lo cierto es que la Ley Núm. 254-1974, *supra*, y sus disposiciones pretenden lograr atender, en gran medida, varias preocupaciones de índole laboral entre personas exconvictas y potenciales patronos y fomentar el empleo y la autogestión.[17] Sin embargo, a lo largo del tiempo, hemos tenido la oportunidad de examinar los efectos de estatutos como este en circunstancias de otra naturaleza.

Así, por ejemplo, en *Pueblo v. Ortiz Martínez*, *supra*, interpretamos la derogada Ley Núm. 108 de 21 de junio de 1968, según enmendada, conocida como *Ley de Eliminación de Convicciones de Delitos Menos Graves y Graves del Récord Penal*, 34 LPRA ant. sec. 1731 *et seq*. (Ley Núm. 108-1968) para determinar si procedía considerar una convicción eliminada del expediente de antecedentes penales al evaluar

---

[16]    Íd.    Véase,    además:    *Restoration    of    rights    project*, https://ccresourcecenter.org/state-restoration-profiles/chart-1-loss-and-restoration-of-civil-rights-and-firearms-privileges/    (última visita, 24 de agosto de 2025).

[17] Véase: Exposición de Motivos de la Ley Núm. 254-1974 (1974 [Parte 2] Leyes de Puerto Rico 280-281) y Exposición de Motivos de la Ley Núm. 314-2004 (2004 [Parte 2] Leyes de Puerto Rico 2244-2246). Véase, además: *Garíb Bazaín v. Hosp. Aux. Mutuo et al.*, 204 DPR 601, 622 (2020).

la concesión de una sentencia suspendida.[18] En esa ocasión expresamos que la Ley Núm. 108-1968, *supra*, se centraba en las consecuencias posteriores a la ejecución de una sentencia penal. En ese sentido, dispusimos que la misma no intentaba anular, dejar sin efecto o corregir un dictamen, sino que partía del supuesto de que el mismo era legal, correcto y había sido satisfecho. Aclaramos que, por el contrario, la consecuencia principal de esta legislación era borrar los efectos jurídicos y socioeconómicos que en nuestra sociedad representa la existencia permanente de un récord penal. Por lo cual, se trataba de una acción de carácter remedial encaminada a proteger y a hacer valer, de manera más efectiva, los derechos civiles de los ciudadanos. Al respecto, añadimos que este estatuto tenía el efecto de que:

> **las convicciones serán eliminadas de todo registro y de toda inscripción, constancia o referencia que exista bajo la custodia de los funcionarios antes indicados, quedando prohibido aludirlas o certificarlas directa o indirectamente. De ese modo, logra plena virtualidad la filosofía consagrada en la ley — congruente con un enfoque moderno de rehabilitación— de que el peticionario nunca fue acusado ni convicto del delito. Ciertamente, tanto el procedimiento judicial como el trámite administrativo establecidos en la ley vienen a**

---

[18] Para ese entonces, la Ley Núm. 254-1974, según enmendada, conocida como *Ley para Autorizar a la Policía de Puerto Rico la Expedición de Certificados de Antecedentes Penales*, 34 LPRA sec. 1725 *et seq.* (Ley Núm. 254-1974) se limitaba a autorizar la expedición de Certificados de Antecedentes Penales y disponer la información que debían contener los mismos. Por su parte, la Ley Núm. 108-1968, según enmendada, conocida como *Ley de Eliminación de Convicciones de Delitos Menos Graves y Graves del Récord Penal*, 34 LPRA ant. sec. 1731 *et seq.* era la que establecía los requisitos que se debían cumplir para eliminar las convicciones graves y menos graves del certificado. Posteriormente, ambos estatutos fueron consolidados en uno solo, permaneciendo vigente la Ley Núm. 254-1974, *supra*.

> **llenar una laguna y a remediar una situación de injusticia que pesaba sobre aquellos ciudadanos que años atrás incurrieron en delitos, pero que después han mantenido una conducta ejemplar en nuestra sociedad. <u>Como consecuencia de ese trámite, los tribunales no pueden tomar en consideración las convicciones así borradas. No puede darse la anomalía de que mientras de un lado el Superintendente de la Policía certifica negativamente, por otro lado[,] el tribunal acuda a sus archivos para resucitar esas convicciones</u>.**
>
> **Resolvemos que, en su verdadero alcance, el Art. 2 de la Ley de Sentencia Suspendida, *supra*, no priva a una persona de sus beneficios si bajo los cauces legales disponibles ha logrado eliminar su convicción de delito grave y posee un Certificado Negativo de Antecedentes Penales legítimamente expedido por el Superintendente de la Policía. Después de todo, los efectos de la Ley Núm. 254 de 27 de julio de 1974 (34 L.P.R.A. sec. 1725), reguladora de los Certificados de Antecedentes Penales archivados en la Policía —que únicamente puede cubrir sentencias *condenatorias*— van más allá del ámbito civil. <u>Carecería de propósito que el legislador autorizara su eliminación y su certificación negativa si todavía pudieran utilizarse por los tribunales</u>.** (Negrillas y subrayado suplidos). *Pueblo v. Ortiz Martínez*, *supra*, págs. 831-832.

Tiempo luego atendimos el caso de *Muñoz, Torres v. Superintendente*, *supra.* En esa instancia, tuvimos la oportunidad de aclarar el alcance que tenía la Ley Núm. 108-1968, *supra*, sobre el estatuto que para ese entonces regulaba la posesión de un arma de fuego (Ley Núm. 17 de 19 de enero de 1951, según enmendada, conocida como Ley de Armas de Puerto Rico, 25 LPRA ant. sec. 411 *et seq.*) y el que regía la concesión de una licencia de tiro al blanco (Ley Núm. 75 del 13 de junio de 1953, según enmendada, conocida como *Ley de Tiro al Blanco*, 15 LPRA ant. sec. 371 *et seq.*). Al igual que aquí, en ese caso ambas leyes establecían —en sus Arts. 17 y 5, respectivamente— una veda

absoluta de conceder licencias a aquellos solicitantes que hubiesen sido convictos de cometer ciertos delitos.[19] Sin embargo, las mismas no contemplaban un remedio para situaciones en las que tales convicciones fuesen eliminadas

---

[19] El Art. 17 de la Ley Núm. 17 de 19 de enero de 1951, según enmendada, conocida como *Ley de Armas de Puerto Rico*, 25 LPRA ant. sec. 411 *et seq.*, disponía que:

> El Superintendente de la Policía de Puerto Rico no expedirá licencia para tener y poseer un arma de fuego a persona alguna que haya sido convicta, en o fuera de Puerto Rico, de cualquiera de los siguientes delitos o de tentativa para cometer los mismos: asesinato en cualquier grado, homicidio, secuestro, violación, mutilación, tentativa de cualquier delito grave, agresión agravada, cuando este delito se haya realizado con un arma cortante, punzante o de fuego, robo, escalamiento, apropiación ilegal, apropiación ilegal agravada, incendio, incendio agravado, incesto, o infracción a la Ley Núm. 53 de 10 de junio de 1948, según ha sido enmendada, o infracción a las secs. 1247 a 1257 del Título 33, o infracción a la sec. 4521 del Título 33, ni a ninguna persona que sea un desequilibrado mental, un ebrio habitual o que sea adicto al uso de narcóticos o drogas, ni a ninguna persona que haya sido convicta por violación a las disposiciones de este Capítulo.

Por su parte, el Art. 5 de la Ley Núm. 75 del 13 de junio de 1953, según enmendada, conocida como *Ley de Tiro al Blanco*, 15 LPRA ant. sec. 371 *et seq*., establecía, en lo pertinente, que:

> (a) Todo ciudadano de Estados Unidos de América o extranjero podrá solicitar del Jefe de la Policía que se le expida una licencia de tirador para lo cual tendrá que facilitar toda la información requerida en los formularios de solicitud que preparará el Jefe de la Policía, y acompañará a esa solicitud un sello de rentas internas de diez (10) dólares; dos retratos 2' x 2', uno de los cuales deberá adherirse a la licencia que se expida; una declaración jurada haciendo constar que nunca ha sido convicto por ningún tribunal en Puerto Rico, en el exterior, o en Estados Unidos de América de delito grave, o de cualquier delito que envuelva actos de violencia o depravación moral o de delito de portar armas, excepto agresión simple y alteración a la paz, cuando no se trate de disparar en la calle o vía pública algún arma de fuego, o que sin ser un caso de legítima defensa se sacase o mostrare en presencia de dos (2) o más personas algún arma mortífera, en actitud violenta, colérica o amenazadora o que de modo ilegal se hiciere uso de dicha arma en alguna riña o pendencia. El solicitante hará constar también en dicha declaración jurada que él no pertenece ni es miembro ni está afiliado a cualquier sociedad, grupo o asamblea de personas que fomenten, aboguen por, aconsejen o prediquen la derrocación o destrucción del Gobierno de Puerto Rico o de Estados Unidos o de cualquier subdivisión política de dichos gobiernos por medio de la fuerza o la violencia o mediante el asesinato de cualquier funcionario de dichos gobiernos o subdivisión política de los mismos.

Véase, *Muñoz, Torres v. Superintendente*, 125 DPR 603, 607-609 (1990).

mediante el procedimiento dispuesto en la Ley Núm. 108-1968, *supra*. Al enfrentarnos a esa controversia, expresamos que no había razón alguna que justificara desviarnos de lo resuelto en *Pueblo v. Ortiz Martínez*, *supra*. Por lo cual, determinamos que:

> **a tenor con la política pública establecida mediante la Ley Núm. 108, *supra*, y reconocida por este Tribunal en Pueblo v. Ortiz Martínez, *supra*, que los Arts. 5 de la Ley de Tiro al Blanco, *supra*, y 17 de la Ley de Armas de Puerto Rico, *supra*, no privan a una persona de sus beneficios si legítimamente ha logrado eliminar de su récord la convicción por los delitos allí establecidos. Dicho de otra manera, el Superintendente de la Policía tiene discreción en estos casos para expedir la licencia solicitada.** (Negrillas y subrayado suplidos). *Muñoz, Torres v. Superintendente*, *supra*, pág. 609.

Ahora bien, posteriormente, en *Rivera Pagán v. Supte. Policía de PR*, 135 DPR 789 (1994), examinamos la actuación del Superintendente de la Policía de denegar una licencia de armas a un ciudadano que fue convicto por dos (2) delitos de tentativa de asesinato. Esto ocurrió a pesar de que el mismo había eliminado judicialmente las condenas de su historial penal al amparo de la Ley Núm. 108-1968, *supra*. Al así hacerlo, concluimos que el ente administrativo no erró en su proceder. Fundamentamos nuestro dictamen en que la eliminación de las convicciones del Certificado de Antecedentes Penales no había sido correcta, pues estas implicaban depravación moral, y la Ley Núm. 108-1968, *supra*, no permitía que se borraran ese tipo de delito del récord penal.[20] Por ende, entendimos que la

---

[20] Para ese momento, la Ley Núm. 108-1968, *supra*, disponía que:

agencia administrativa descartó acertadamente la Resolución mediante la cual el foro primario ordenó la eliminación de las convicciones del allí recurrido.

Por último, recientemente, en *Santiago Cora v. ELA*, 2025 TSPR 44, 215 DPR __ (2025), atendimos la interrogante de si el Estado viene obligado a devolverle a una persona las fotografías de fichaje y las huellas dactilares, luego de que esta extingue una sentencia penal y logra eliminar su condena del Certificado de Antecedentes Penales. Si bien contestamos la pregunta en la negativa, en ese caso reiteramos que la Ley Núm. 254-1974, *supra*:

> se funda en las consecuencias a posteriori una vez ejecutada una sentencia penal. No intenta anularla, dejarla sin efecto o corregirla. Por el contrario, parte del supuesto de que la misma fue legal, correcta y cumplida. **Empero, los tribunales no pueden tomar en consideración las**

---

Toda persona que haya sido convicta de delito menos grave o delito grave *que* no fuere asesinato, homicidio voluntario, robo, incesto, extorsión, violación, sodomía, actos lascivos o impúdicos, secuestro, robo de menores, escalamiento agravado, incendio agravado, venta y/o distribución de sustancias controladas, sabotaje de servicios públicos esenciales, la posesión, uso o venta de armas automáticas, cualquier violación a las secs. 561 *et seq.* del Título 25 que constituya delito grave y cualquier delito grave que surja como consecuencia de la posesión o uso ilegal de explosivos o detonadores, artefactos podrá solicitar y obtener del Tribunal de Distrito de Puerto Rico una orden para que dichas convicciones sean eliminadas de su récord penal, siempre que en el caso concurran las siguientes circunstancias*:*

(a) Que los delitos por los cuales fue convicto no impliquen depravación moral.

(b) Que hayan transcurrido cinco (5) años desde la última convicción, en los casos de delitos menos graves, y quince (15) años desde la última convicción en los casos de delitos graves, y durante ese tiempo no haya cometido delito alguno. 34 LPRA ant. sec. 1731. Véase, *Rivera Pagán v. Supte. Policía de PR*, 135 DPR 789, 794-795 (1994).

No obstante, cabe destacar que en la Ley Núm. 254-1974, *supra*, no se incluyó como un criterio a considerar previo a ordenar la eliminación de convicciones penales el que los delitos envueltos no impliquen depravación moral.

**convicciones borradas. Una vez se ordena la eliminación de una convicción, esta debe ser excluida de todo registro o constancia ante las autoridades de orden público concernientes.** (Citas omitidas). (Negrillas y subrayado suplidos). *Santiago Cora v. ELA*, *supra*.

F. **Ley del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad de Puerto Rico y del Sistema de Información de Justicia Criminal**

Por otra parte, resulta importante señalar que la Asamblea Legislativa promulgó la Ley Núm. 143-2014, conocida como *Ley del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad del Estado Libre Asociado de Puerto Rico y del Sistema de Información de Justicia Criminal*, 4 LPRA sec. 533 *et seq.* (Ley Núm. 143-2014) con el propósito de ordenar a los distintos componentes de seguridad a establecer un sistema tecnológico y un procedimiento uniforme que permita el intercambio efectivo de información entre las entidades gubernamentales de Puerto Rico relacionadas con la seguridad pública del país y aquellas que se encuentran estrechamente vinculadas con las mismas. Exposición de Motivos de la Ley Núm. 143-2014 (2014 [Parte 2] Leyes de Puerto Rico 1457). Esto se hizo de forma tal que se lograse el máximo funcionamiento del Sistema de Información de Justicia Criminal (SIJC o Sistema). Íd. Cuando nos referirnos al SIJC-PR, hablamos del sistema encargado de recibir, custodiar y proveer información de naturaleza penal completa, actualizada y correcta al Departamento de Justicia, Policía de Puerto Rico, Poder Judicial, Departamento de Corrección y Rehabilitación, Departamento

de la Familia, Departamento de Transportación y Obras Públicas, Instituto de Ciencias Forenses y el Departamento de Salud (Comité Intergubernamental). Art. 4 de la Ley Núm. 143-2014, 4 LPRA sec. 533a.

En esencia, el Sistema es una oficina adscrita al Departamento de Justicia que recopila información criminal sobre aquellos adultos que son o hayan sido convictos de delitos graves o menos graves. Íd. Esta información "es utilizada por las agencias de ley y orden locales, estatales y federales para conocer los antecedentes penales de los convictos y de esta manera estar en mejor posición para fijar fianzas en futuras denuncias, determinar reincidencias, autorizar la compra de armas de fuego, […] entre otros".[21] En fin, el Sistema es un repositorio de información penal que nutre sus bases de datos con la información que le suplen las agencias concernientes que forman parte del Comité Intergubernamental. Art. 4 de la Ley Núm. 143-2014, *supra*.

Cabe mencionar que entre los deberes y funciones del mencionado Comité Intergubernamental se encuentran, en lo pertinente, considerar las solicitudes de otras dependencias dentro y fuera de Puerto Rico, y realizar acuerdos para compartir información necesaria o conveniente para el Gobierno de Puerto Rico; evaluar las leyes, directrices y prácticas del Gobierno Federal y otros

---

[21] Departamento de Justicia de Puerto Rico, *Sistema de Información de Justicia Criminal (SIJC)*, https://www.justicia.pr.gov/secretarias-y-oficinas/sistema-de-informacion-de-justicia-criminal-sijc/ (última visita, 20 de agosto de 2025).

gobiernos estatales respecto a los distintos sistemas de información de justicia criminal para el mejoramiento del Sistema y para garantizar el cumplimiento de la legislación federal pertinente, y revisar las decisiones adversas del Director Administrativo del SIJC-PR en los casos en que un ciudadano ha presentado una reclamación escrita alegando que la información recopilada por el SIJC-PR es incorrecta, está incompleta, o no autorizada por ley. Art. 6 de la Ley Núm. 143-2014, 4 LPRA sec. 533c (g), (h) y (q).

Por otro lado, la Ley Núm. 143-2014, *supra*, dispone para que el Sistema, además de tener disponible información sobre denuncias, órdenes de arresto, sentencias y datos o características de identificación física (tales como fotos, cicatrices, tatuajes y marcas de toda persona imputada o convicta de delito, así como los datos relacionados con su proceso penal), entre otras, pueda proveer cualquier otra información de naturaleza criminal que el Comité Intergubernamental estime necesaria, por su relevancia para la seguridad en el País y para el cumplimiento con los propósitos del SIJC-PR. Art. 8 de la Ley Núm. 143-2014, 4 LPRA sec. 533e. Sin embargo, sobre ese aspecto, el estatuto establece que:

> **El Comité [Intergubernamental] tomará todas las medidas necesarias para asegurar al máximo posible la seguridad y corrección de toda aquella información que sea recopilada a través del Sistema y para la protección individual de los derechos de privacidad de acuerdo con los principios constitucionales del Estado Libre Asociado. […] Asimismo, tomará todas las medidas necesarias para asegurarse de que todo dato relativo a convicciones cuya eliminación del**

**r[é]cord penal de una persona haya sido ordenado por un tribunal competente sea efectiva y totalmente eliminada del Sistema de Información de Justicia Criminal, incluyendo pero sin que esto se entienda como una limitación, las memorias de cualesquiera computadoras utilizadas por el Sistema**. (Negrillas y subrayado suplidos). Íd.[22]

Además, **cualquier persona que entienda que toda o parte de la información recopilada por el SIJC-PR bajo su nombre es incorrecta, está incompleta, o no está autorizada por ley, puede presentar una reclamación por escrito a tales efectos ante el Director Administrativo del Sistema.** La reclamación deberá contener los fundamentos de su alegación, la información complementaria o sustitutiva que, según éste, debe aparecer en el récord y los datos específicos que presuntamente se ha registrado sin base legal. Art. 12 de la Ley Núm. 143-2014, 4 LPRA sec. 533i. La presentación de una reclamación bajo el procedimiento mencionado deberá realizarse dentro del transcurso de diez (10) días luego de la entrega de la copia que contenga la información solicitada. Íd. Tanto la reclamación que se presente como la revisión judicial que proceda, deberá cumplir con las disposiciones de la Ley Núm. 38-2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601 *et seq*. Íd.

---

[22] El 12 de julio de 2023, el Departamento de Justicia de Puerto Rico emitió la Orden Administrativa Núm. 2023-06, mediante la cual notificó la adopción del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad del Gobierno de Puerto Rico.

**III**

**A.**

Mediante el **Caso Núm. CC-2024-0732**, el Negociado de la Policía argumentó, en síntesis, que el Tribunal de Apelaciones cometió un error al ordenar la devolución de la licencia de armas de la señora J.H.V. a base de las expresiones emitidas por este Foro en *Pueblo v. Ortiz Martínez*, *supra*, y *Muñoz, Torres*, *supra*. Esto, al concluir que la información de las convicciones previas de la recurrida, la cual consta en los sistemas investigados por la agencia, carece de eficacia jurídica. Según el peticionario, la eliminación de los antecedentes penales de la señora J.H.V. no restablece automáticamente el derecho de esta a poseer un arma de fuego. A su vez, entiende que, por mandato legislativo, le corresponde considerar los delitos que fueron cometidos por la recurrida, pues tiene el deber de asegurar que las personas que posean licencias de armas no constituyan una amenaza o un peligro para la sociedad y cumplan con el estado de derecho vigente en esta jurisdicción.

Por su parte, la señora J.H.V. presentó su oposición. A grandes rasgos, alegó que en Puerto Rico no existe legislación que establezca que, una vez eliminada una condena del Certificado de Antecedentes Penales, esta deba utilizarse para impedir que una persona posea un arma de fuego. Añadió que, por el contrario, tras eliminarse los delitos del récord penal, el Estado tiene el deber de

borrar esa información de todos sus registros y memorias, pues así se lo ordena la Ley Núm. 143-2014, *supra*. Por ende, arguye que el Gobierno no puede utilizar esos datos para privarle de su derecho constitucional a poseer un arma, pues los mismos son, para todos los efectos, inexistentes.

**B.**

Por otro lado, a través del **Caso Núm. CC-2024-0773**, el Negociado de la Policía adujo que el Tribunal de Apelaciones incidió al revocar la determinación del Tribunal de Primera Instancia por medio de la cual se sostuvo la denegatoria del peticionario de emitir una licencia de armas a favor del señor D.J.C.M. En específico, señaló que el foro apelativo intermedio basó su fallo en unas expresiones emitidas por este Tribunal en los casos *Muñoz, Torres v. Superintendente Policía*, *supra*, y *Rivera Pagán v. Supte. Policía de P.R.*, *supra*, sin considerar el estado de derecho dispuesto en la Ley Núm. 168-2019, *supra*. Asimismo, argumentó que la existencia de una convicción en cualquiera de los registros aludidos en la Ley Núm. 168-2019, *supra*, es motivo suficiente para denegar o revocar una licencia de armas.

Contrariamente, el señor D.J.C.M. se opuso e indicó que, a pesar de que en una etapa temprana de su vida infringió la ley y como resultado de ello fue convicto de cometer ciertos delitos graves y menos graves, este

cumplió con los términos de su Sentencia y, posteriormente, tales antecedentes penales fueron eliminados de su historial criminal conforme a derecho. Por tal razón, entiende que satisface los requisitos impuestos por la Ley Núm. 168-2019, *supra*, para que el Negociado de la Policía pueda expedir una licencia de armas a su favor.

### C.

Como punto inicial, resulta pertinente destacar que, en *Muñoz, Torres v. Superintendente*, *supra*, este Tribunal atendió una controversia parecida a la que se nos presenta en estos casos. Al evaluar el asunto bajo el esquema normativo vigente para ese entonces, concluimos que las disposiciones estatutarias que impedían que una persona convicta de ciertos delitos poseyera una licencia de armas, no eran de aplicación a aquel ciudadano que lograba eliminar de su récord tales condenas. Para arribar a esa determinación utilizamos por analogía los fundamentos expuestos en *Pueblo v. Ortiz Martínez*, *supra*, en donde establecimos que las convicciones eliminadas del expediente penal de una persona debían ser descartadas de todo registro y de toda inscripción, constancia o referencia que existiera bajo la custodia de las autoridades del orden público, quedando prohibido aludirlas o certificarlas de manera directa o indirecta. Véase, además, *Santiago Cora v. ELA*, *supra*. Hoy día, el Art. 8 de la Ley Núm. 143-2014, *supra*, establece de manera similar que el Estado, a través

del Comité Intergubernamental, tiene el deber de tomar todas las medidas necesarias para asegurar que cualquier dato relativo a convicciones cuya eliminación del expediente penal de una persona haya sido ordenada por un tribunal competente, sea eliminado efectiva y totalmente del Sistema de Información de Justicia Criminal, incluyendo, pero sin limitarse a, las memorias de las computadoras utilizadas por el Sistema.

Ahora bien, el hecho de que una persona presente un Certificado de Antecedentes Penales negativo no abre la puerta automáticamente a que el Negociado de la Policía le conceda una licencia de armas. Esto pues, se trata de tan solo uno de varios criterios que se deben cumplir para que se pueda otorgar dicho permiso. El ente administrativo no tiene discreción para autorizar la posesión de un arma de fuego si, en casos como los presentes, los registros digitales que revisa reflejan que la persona solicitante tiene un expediente con convicciones penales. No tendría sentido que se le requiera al Negociado de la Policía que investigue ciertos archivos si luego no puede considerar el contenido de estos para aprobar o denegar una solicitud de licencia de armas. Por ende, indistintamente de que un antecedente penal aparezca o no en el Certificado provisto a la agencia, el ente administrativo tiene la obligación de denegar una licencia de armas si de los registros investigados se desprende que existen condenas en contra de la persona solicitante. Incluso, consciente de que la

información que surge de los archivos pudiera estar incompleta, incorrecta o no autorizada por ley, la Asamblea Legislativa creó un mecanismo de revisión en el Art. 12 de la Ley Núm. 143-2014, *supra*, el cual se debe llevar a cabo ante el Director Administrativo del Sistema. De esa manera, es el SIJC-PR, y no el Negociado de la Policía, quien tiene la facultad de corregir o modificar cualquier información que así lo amerite.

A la luz de lo expuesto, resulta evidente que el Tribunal de Apelaciones cometió un error con la determinación que tomó tanto en el **Caso Núm. CC-2024-0732** como en el **Caso Núm. CC-2024-0773**. Contrario a lo resuelto por el foro apelativo intermedio, el Negociado de la Policía sí tenía que considerar las convicciones de la señora J.H.V. y del señor D.J.C.M. para revocar y denegar, respectivamente, las licencias de armas de estos. Ello, sin perjuicio de que los recurridos pudieran acudir al proceso dispuesto en el Art. 12 de la Ley Núm. 143-2014, *supra*, con el fin de que se corrija la información que aparece en el SIJC-PR y se recojan los cambios que han tenido sus expedientes penales. Ahora bien, entendemos que en el caso de la señora J.H.V., aun de esta llevar a cabo ese proceso, estaría vedada de obtener una licencia de armas por razón de haber incurrido en un acto violento que así se lo impide.

Como dispusimos previamente, y como bien nos señaló el peticionario, en *Rolón Martínez v. Supte. Policía*, *supra*,

habíamos resuelto que, al amparo de la derogada Ley Núm. 404-2000, *supra*, el Negociado de la Policía tenía la facultad de denegar o revocar una licencia de armas si la persona tenía un "historial de violencia". Según expresamos en ese entonces, dicho concepto no requiere tan siquiera que la persona envuelta haya sido convicta de cometer delito alguno. Al estudiar con detenimiento el Art. 2.02 de la Ley Núm. 168-2019, *supra*, observamos que en este permanecieron vigentes algunos factores, los cuales al emitir nuestros pronunciamientos en *Rolón Martínez v. Supte. Policía*, *supra*, consideramos determinantes para concluir que el Negociado de la Policía tenía el deber de examinar si el solicitante de una licencia de armas posee la capacidad mental y emocional para obtenerla. En ese sentido, el estatuto retuvo criterios dirigidos a identificar si la persona: es adicta a sustancias controladas o ebria habitual; es incapaz mental; ha sido separada de las fuerzas armadas o agencias del orden público; ha incurrido en actos de violencia; o se le ha prohibido por orden judicial acosar, espiar o amenazar. En otras palabras, el artículo referenciado pretende que el ente administrativo —el cual es el encargado de proteger a las personas y a la propiedad y de tomar las medidas preventivas necesarias para evitar la ocurrencia de algún incidente desafortunado— tenga la facultad para tomar en cuenta la existencia de cualquier acto de naturaleza violenta, lo que es distinto al criterio de no tener una

condena criminal previa. *Rolón Martínez v. Supte. Policía*, *supra*, págs. 44, 49.[23]

Con esto en mente y luego de revisar el expediente del **Caso Núm. CC-2024-0732** observamos que la señora J.H.V. fue objeto de denuncias por presuntamente violar la Ley Núm. 54-1989, *supra*. De igual forma, se expidió una Orden de Protección en su contra al amparo de ese mismo estatuto. En vista de ello, resulta patente que la recurrida ha incurrido en conductas violentas que la inhabilitan mental y emocionalmente para poseer y portar un arma de fuego en Puerto Rico.

**IV**

Toda vez que el Negociado de la Policía es el ente especializado en la materia y sus actuaciones gozan de una presunción de regularidad y corrección que no fue rebatida, le otorgamos la deferencia judicial que amerita. La señora J.H.V. y el señor D.J.C.M. no demostraron que las decisiones de la agencia administrativa hubiesen sido irrazonables, ilegales o contrarias a derecho. Así las cosas, revocamos las Sentencias recurridas del Tribunal de Apelaciones en los casos consolidados. En consecuencia, reinstalamos la Resolución emitida por el Negociado de la Policía el 5 de junio de 2024 en el **Caso Núm. CC-2024-0732** y la Resolución dictada por el Tribunal de Primera

---

[23] Véase, además, Pérez Sánchez, A. L., *Enigmas, lagunas jurídicas y ambigüedades de la nueva ley de armas de Puerto Rico: destapando el velo de la eliminación de convicciones, el historial de violencia y la incapacidad mental*, 18 Rev. Crit. UIPR 111, 129-131 (2022).

Instancia el 27 de marzo de 2024 en el **Caso Núm. CC-2024-773**.

Se dictará Sentencia en conformidad.

Mildred G. Pabón Charneco          Roberto Feliberti Cintrón
       Jueza Asociada                     Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| J.H.V.<br><br>    Recurrida<br><br>        v.<br><br>Negociado de la Policía de Puerto Rico<br><br>    Peticionario<br>_____<br><br>D.J.C.M.<br><br>    Recurrido<br><br>       v.<br><br>Negociado de la Policía de Puerto Rico; Departamento de Seguridad Pública; Estado Libre Asociado de Puerto Rico<br><br>    Peticionarios | CC-2024-0732<br><br>cons. con<br><br>CC-2024-0773 |

SENTENCIA

En San Juan, Puerto Rico, a 12 de diciembre de 2025.

Atendida la *Moción solicitando consolidación* que presentó la Sra. J.H.V el 11 de julio de 2025 en el **Caso Núm. CC-2024-0732**, se provee Ha lugar a la misma. En consecuencia, se consolidan en la presente Opinión y Sentencia el **Caso Núm. CC-2024-0732** con el **Caso Núm. CC-2024-0773**.

A su vez, por los fundamentos expuestos en la Opinión que antecede, los cuales se hacen formar parte de la presente Sentencia, se revocan las Sentencias recurridas del Tribunal de Apelaciones en los casos consolidados. En consecuencia, se reinstala la Resolución emitida por el Negociado de la Policía el 5 de junio de 2024 en el **Caso Núm. CC-2024-0732** y la Resolución dictada por el Tribunal de Primera Instancia el 27 de marzo de 2024 en el **Caso Núm. CC-2024-0773**.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite una Opinión conforme en parte y disidente en parte. Los Jueces Asociados señores Kolthoff Caraballo y Colón Pérez no intervinieron.

                    Javier O. Sepúlveda Rodríguez
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

J.H.V.

     Recurrida

       v.

Negociado de la Policía de
Puerto Rico

     Peticionario

_____

D.J.C.M.

     Recurrido

       v.

Negociado de la Policía de
Puerto Rico; Departamento
de Seguridad Pública;
Estado Libre Asociado de
Puerto Rico

     Peticionarios

CC-2024-0732
cons. con
CC-2024-0773

Opinión de conformidad en parte y disidente en parte emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 12 de diciembre de 2025.

La eliminación de antecedentes penales es piedra angular del principio fundamental de la rehabilitación. Ausente un derecho superior, no debe concederse al Negociado de la Policía de Puerto Rico (NPPR) una facultad que excede la que en hechos similares le hemos reconocido a los propios tribunales, a saber, el poder considerar convicciones satisfechas y eliminadas de los registros por el proceso dispuesto por ley para adjudicar la concesión de licencias

de portación de armas. Esto no solo tiene el efecto de reafirmar la existencia de aquello que los tratadistas penales llaman "la condena vitalicia escondida", sino que se aparta del mapa de ruta que ha guiado a este Tribunal por décadas en materia de reforma penal.[1]

La mayoría enmarca la controversia de autos en "si una persona que obtuvo la eliminación de ciertos delitos de su Certificado de Antecedentes Penales adviene automáticamente elegible para obtener una licencia de armas".[2] Aduce que "la eliminación de los antecedentes penales […] no restablece automáticamente el derecho […] a poseer un arma de fuego".[3]

Difiero de que este es el factor medular de la controversia de los casos aquí consolidados. La cuestión verdaderamente ante nos es el efecto concreto de la eliminación de los antecedentes penales y su efecto sobre la actuación administrativa del NPPR. Veamos.

## I.

### A.

Sabido es que el derecho constitucional a la portación de armas no es absoluto, y que el Estado está facultado para limitarlo. La exigencia de una licencia de portación de armas, la cual puede entenderse como una limitación al derecho protegido por la Segunda Enmienda, responde a la política

---

[1] Véase A. Nusbaum, *A Second Chance: Amnesty for the first offender*, New York, Hawthorn Books, Inc., 1974, pág. 3: "Whatever the sentence may be—whether it be the length of only a day, a year, or the "maximum" of five or even twenty years or more, it is as nothing compared to the hidden lifetime sentence that is the consequence of every conviction. For long after the ordeal of the prescribed punishment has passed into oblivion, the lasting and irreversible stain of the criminal record will shadow the offender wherever he goes".
[2] Opinión, pág. 1.
[3] Opinión, pág. 37.

pública de cero tolerancia contra el crimen, de promover la efectividad de las agencias de orden público, y de promover mayor seguridad y bienestar al pueblo. <u>Pueblo v. Rodríguez López et al.</u>, 210 DPR 752, 782 (2022).

El Artículo 2.02(a) de la *Ley de Armas de Puerto Rico*, Ley Núm. 168-2019 (Ley de Armas), 25 LPRA sec. 462a, dispone que será requisito para la expedición de una licencia de portación de armas que la parte solicitante tenga un expediente negativo de antecedentes penales y no se encuentre acusada y pendiente o en proceso de juicio por alguno de los delitos especificados en la Ley de Armas. Según el Artículo 2.02(d), *supra*, previo a cualquier expedición de licencia se corroborará el cumplimiento con los requisitos del Artículo 2.02(a), *supra*, mediante la investigación en los archivos digitales de cualquier agencia gubernamental de Puerto Rico, Estados Unidos y cualquier subdivisión de estas, así como cualquier entidad extranjera a la que pueda tener acceso. Si tras esta investigación resulta algún impedimento o incumplimiento con los requisitos, no se concederá la licencia.

Sobre los archivos digitales que el NPPR está facultado a auscultar, el Artículo 8 de la Ley Núm. 143-2014, según enmendada, también conocida como la *Ley del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad del Estado Libre Asociado de Puerto Rico y del Sistema de Información de Justicia Criminal*, dispone que será imperativo para el Comité Intergubernamental, integrado por varias entidades gubernamentales —incluido el NPPR—,

"asegurarse de que **todo dato relativo a convicciones cuya eliminación del récord penal de una persona haya sido ordenado por un Tribunal competente sea efectiva y totalmente eliminada** del Sistema de Información de Justicia Criminal". 4 LPRA sec. 533e.

En Muñoz, Torres v. Superintendente Policía, 125 DPR 603, 609 (1990), a tenor con la política pública establecida en la Ley de Armas de aquel momento, Ley Núm. 17 de 19 de enero del 1951, esbozamos que el ahora derogado Artículo 17 de dicha ley, 25 LPRA ant. sec. 427, (el cual vedaba de posesión de un arma a aquellos solicitantes convictos de ciertos delitos) no priva de su beneficio a personas que **legítimamente** lograron eliminar de su récord la condena por los delitos allí establecidos.[4]

B.

La Sección 19 del Artículo VI de nuestra Constitución establece que es política pública del Estado reglamentar las instituciones penales para hacer posible la rehabilitación moral y social de la persona convicta. Sec. 19, Art. VI, Const. PR, Tomo 1. A tenor con este mandato, se creó la Ley Núm. 254 de 27 de julio de 1974, conocida como la *Ley que autoriza a la Policía de Puerto Rico a expedir Certificados de Antecedentes Penales*, 34 LPRA sec. 1725 *et seq.* Esta ley se dispuso a atender la problemática de que a la ciudadanía

---

[4] Si bien es cierto que en Rivera Pagán v. Supte. Policía de PR, 135 DPR 789, 801 (1994) establecimos que el derecho a esta recuperación de derechos no es absoluto, distinguimos aquel caso del presente pues, en aquel caso, decidimos que procedía la denegación de la licencia de portación de armas debido a que el delito que había sido eliminado era una tentativa de asesinato, el cual implica depravación moral.

se le manchara su certificado de antecedentes penales innecesariamente. Véase Exposición de Motivos de la Ley Núm. 254-1974. Posteriormente, esta ley se enmendó por la Ley Núm. 314-2004, la cual tuvo como meta expresa **cumplir con el mandato constitucional de rehabilitar a los exconvictos con miras a evitar que se lesione injustamente la reputación de la persona o se reduzcan sus posibilidades de dedicarse a actividades legítimas y productivas**. Véase Exposición de Motivos de la Ley Núm. 314-2004.

Este Tribunal se encaminaba a adoptar la filosofía de rehabilitación al atender el efecto de leyes similares, como la Ley Núm. 108 de 21 de junio de 1968, conocida como la *Ley de Eliminación de Convicciones de Delitos Menos Graves y Graves del Récord Penal*, 34 LPRA sec. 1731 *et seq* (Ley Núm. 108). En <u>Pueblo v. Ortiz Martínez</u>, 123 DPR 820, 831 (1942), dispusimos que la eliminación de antecedentes penales bajo aquel estatuto tenía el efecto de eliminar las convicciones de todo registro, y de toda inscripción, constancia o referencia que a ellas existiese, por lo que prohibimos aludir a estas directa o indirectamente. Mostrando gran sensibilidad, añadimos:

> [E]l ser humano muchas veces tiende a superar aquellas actuaciones y conductas ilegales del pasado, y que compete al Estado proveer los mecanismos necesarios para una total rehabilitación. […] Su efecto principal **es borrar las consecuencias jurídicas y socioeconómicas** que en nuestra sociedad representa la existencia permanente de un récord penal. Se trata de una acción de carácter remedial encaminada a proteger y a hacer valer, de manera más efectiva, los derechos civiles de un ciudadano. (Negrilla suplida) <u>Íd.,</u> págs. 829-830.

Este proceder resalta el enfoque moderno de la rehabilitación: que la parte peticionaria nunca fue acusada

ni convicta de delito. Íd., pág. 831. Mediante nuestro dictamen en aquella ocasión, dispusimos que una eliminación de antecedentes a raíz de la Ley Núm. 108 tenía el efecto de impedir que los tribunales tomaran en consideración aquellas convicciones eliminadas. Íd., pág. 832. De lo contrario, explicamos, carecería de propósito que la Asamblea Legislativa autorizara la eliminación de las convicciones y la certificación negativa de delitos si el tribunal aún pudiera aludir a ellos, pues convertiría la eliminación en un ejercicio vacío. Íd.

Asimismo, nuestras expresiones en Santiago Cora v. ELA, 2025 TSPR 44, 8, 215 DPR ___, exponen que **una vez se ordena la eliminación de una condena, esta debe excluirse de todo registro o toda constancia ante las autoridades públicas concernidas.** Indicamos que podría reconocérsele a la persona exconvicta, al cumplirse los escenarios contemplados por la ley, su derecho estatutario a que se le conceda el beneficio de eliminar su historial criminal del certificado de antecedentes penales. Íd. Esto se distingue como una cuestión de política pública y no como un derecho constitucional. **Su propósito es propender a la reinserción social del individuo y evitar las trabas que pudiera propiciar la constancia pública de su conducta delictiva. Naturalmente, para darle plena vigencia a los efectos de la legislación, una vez se ordena borrar la constancia de una condena, no se puede mantener ningún registro público de esta, ni aludirla en procedimientos judiciales posteriores.** Íd.

Esto coincide con el propósito legislativo del Congreso federal al convertir en ley el *Gun Control Act* ("Congress, in passing GCA's expungement provision, **intended that a state expungement procedure completely remove the effects of the underlying conviction**". <u>Wyoming ex rel. Crank v. U.S</u>., 539 F.3d 1236 (2008)).[5] Además, según expresó el Departamento de Justicia Federal, "purging contemplates the **complete removal** of a record from information systems […] **purged information may never be officially recalled**. When the purpose of purging is to remove the onus of a criminal record, **it is consistent to also remove disqualifications associated** with the record".[6]

## II.

A fines de facilitar la reintegración a la sociedad de las personas que han delinquido, y como método práctico de hacer valer la aspiración a la rehabilitación, se dispuso por mandato legislativo la eliminación de ciertos delitos del certificado de antecedentes penales. Debemos interpretar la eliminación de antecedentes penales como un ejercicio en virtud del cual la ciudadanía pueda aspirar a su reinserción social y a vidas plenas tras cumplir sentencias por delitos.

---

[5] En la esfera federal, el *Gun Control Act of 1968*, 18 USC sec. 921 *et seq.*, prohíbe la posesión de un arma de fuego en la circunstancia de que la parte solicitante haya sido condenada por la comisión de un delito que conlleve pena de prisión por un término mayor a un (1) año, o que sea un delito menos grave de violencia doméstica. **No obstante, las personas convictas a nivel estatal pueden evitar esta prohibición siempre y cuando la condena que lo impedía haya sido perdonada, anulada o eliminada, o si los derechos civiles del solicitante exconvicto son restaurados por el Estado.** (Traducción suplida) 18 USC sec. 921(a)(20)(b).

[6] National Criminal Justice Information and Statistics Service, U.S. Department of Justice's Law Enforcement Assistance Administration, *Privacy and Security of Criminal History Information: An Analysis of Privacy Issues*, Washington D.C., LEAA, 1978, pág. 26.

Igualmente, en función del cumplimiento de este ejercicio, tenemos un deber de asegurar, por mandato constitucional, que el Estado cumpla con sus normativas y reglas.

Los propios tribunales hemos limitado nuestra capacidad para aludir a las convicciones por delito debidamente expiadas. Pueblo v. Ortiz Martínez, *supra*, pág. 832. Además, hemos resuelto que los tribunales no tenemos la obligación de acoger de manera automática las interpretaciones de las agencias sobre sus propias facultades, sino que nos corresponde interpretar el alcance de estas a la luz del derecho aplicable.[7] En atención a esto, la interpretación que se hace sobre las facultades abarcadoras del NPPR de considerar información de sus archivos digitales que no debe reflejarse atenta, no solo contra nuestros pronunciamientos sobre los límites del poder administrativo, sino contra el deber de las agencias de seguridad pública de mantener sus registros actualizados de conformidad con la ley.

En el caso de la Sra. Jaylen Hernández Vázquez (señora Hernández Vázquez), la mayoría aduce que procedía la revocación de su licencia de armas, pues la búsqueda del NPPR en los registros digitales mostraba una condena previa por delito grave tras violar la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como la *Ley de Sustancias Controladas*, 24 LPRA sec. 2101 *et seq*. (Ley de Sustancias Controladas). A pesar de que la señora Hernández Vázquez logró

---

[7] Véase Vázquez v. Consejo de Titulares, 2025 TSPR 56, 215 DPR ____ (en cuanto decidimos que la revisión judicial no tiene por qué ser deferente a las conclusiones de derecho de una agencia, sino que debe ser deferente a la política pública).

eliminar tal delito de sus antecedentes penales, la mayoría entiende que el mandato legislativo obliga al NPPR a tomar en cuenta los resultados de la búsqueda electrónica. Razona que la existencia de un delito grave en su expediente digital era suficiente para revocar su licencia de armas. Basa su decisión en la corrección del proceder administrativo, y esboza que, aún si el NPPR no estuviera facultado para considerar convicciones eliminadas, procedía la revocación por su historial de violencia doméstica.

No estoy de acuerdo con concederle esta facultad al NPPR, pues contraviene los principios que guían el ejercicio de la eliminación de los antecedentes penales. No obstante, concuerdo con que la comisión de delitos violentos y/o el historial de violencia de una persona le deben inhabilitar de poseer un arma. Luego de haberse eliminado su condena previa, la señora Hernández Vázquez fue arrestada por acecho bajo la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, también conocida como la *Ley de Prevención e Intervención con la Violencia Doméstica*, 8 LPRA sec. 601 *et seq.*, lo cual figura entre aquellos delitos que descalifican la posesión de armas por su naturaleza violenta.

Por este único fundamento, estoy de acuerdo con la determinación sobre el caso de la señora Hernández Vázquez, en tanto su historial de violencia es motivo suficiente para confirmar la revocación de su licencia de portación, conforme a las facultades del NPPR.

Por otro lado, el Sr. David Jomayfry Chaulizant Mercado (señor Chaulizant Mercado) logró la eliminación de sus

delitos pasados mediante fíat judicial. Este demostró su diligencia en procurar la eliminación de sus convicciones previas a través del tribunal, según le exige la ley que provee para su rehabilitación. Por ello, difiero de la interpretación adoptada en la ponencia mayoritaria de que el NPPR está facultado a considerar antecedentes penales expiados para efectos de la concesión de una licencia de portación de armas, aun cuando estos aparezcan en sus búsquedas electrónicas. La eliminación de los delitos de escalamiento menos grave y tentativas bajo la Ley de Sustancias Controladas debió impedir que el NPPR tomara en cuenta dichos delitos en la concesión de una licencia de portación de armas. Si el NPPR va a tener tal facultad, esta debe estar expresamente legislada, de lo contrario, el derecho invocado por el señor Chaulizant Mercado debe prevalecer sobre lo que, a todas luces, constituye una dejadez del ente administrativo.

La opinión mayoritaria pasa por alto la ineficiencia del NPPR, con respecto a este particular, pues le permite excederse de sus facultades administrativas tras incumplir con su deber ministerial. Peor aún, excusa la negligencia del NPPR al disponer que el señor Chaulizant Mercado tenía disponible un recurso administrativo adicional para rectificar la anomalía de los archivos digitales del Sistema de Información de Justicia Criminal. De un plumazo, se le impone una carga adicional al ciudadano diligente, mientras se premian las actuaciones laxas de la agencia.

Contrario a lo que ocurrió en este caso, la ley dispone un mandato expreso de que esta entidad remueva de los sistemas de información, de manera diligente, toda convicción cuya eliminación se ordenó debidamente. Utilizar la seguridad pública livianamente como pretexto para expandir las facultades del NPPR, en detrimento de los principios que guían nuestro ordenamiento jurídico, socava la confianza pública en el compromiso de las instituciones gubernamentales de cumplir con los preceptos constitucionales aplicables.

En virtud de las expresiones anteriores, el ejercicio de eliminar los delitos implica necesariamente su desaparición de los sistemas de información del aparato estatal de seguridad pública. De otro modo, se desvirtúa el propósito de la eliminación de los antecedentes penales y la filosofía de rehabilitación que persigue. Por las razones expuestas, estoy conforme en parte y disiento en parte con el resultado alcanzado por la mayoría de este Tribunal.

Maite D. Oronoz Rodríguez
Jueza Presidenta