Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| MAGGIE ACEVEDO SEPÚLVEDA Y OTROS  Recurrentes  v.  DEPARTAMENTO DE SALUD  Recurrido | TA2025RA00321 | *REVISIÓN ADMINISTRATIVA* procedente de la Comisión Apelativa del Servicio Público  Caso número: 2000-06-1639  Sobre: Retención |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 16 de enero de 2026.

Comparece la parte recurrente, Maggie Acevedo Sepúlveda y otros, y nos solicita que revoquemos la *Resolución* emitida y notificada por la Comisión Apelativa del Servicio Público el 14 de octubre de 2025. Mediante el referido dictamen, el foro administrativo declaró No Ha Lugar la solicitud de reconsideración promovida por la parte recurrente. En su consecuencia, confirmó la *Resolución* emitida por dicho foro el 15 de septiembre de 2025, en cuanto al periodo de tiempo de salarios y beneficios marginales dejados de devengar por la parte recurrente.

Por los fundamentos que exponemos a continuación, se confirma la *Resolución* recurrida. Veamos.

### I

El 28 de mayo de 2014, el Tribunal Supremo de Puerto Rico (Tribunal Supremo) emitió una *Sentencia*[1] en el caso de *Acevedo Sepúlveda v. Dpto. Salud*, 191 DPR 28 (2014), en la que determinó que no correspondía la reinstalación de unos empleados

---

[1] Apéndice 3 en la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

cesanteados ilegalmente por el Departamento de Salud (Dpto. de Salud o parte recurrida), y devolvió el caso a la Comisión Apelativa del Servicio Público (CASP) para calcular la paga dejada de percibir, desde el momento en que ocurrió la cesantía ilegal de cada empleado, **hasta la fecha en que se vendió el último centro u hospital del Dpto. de Salud**.

El 26 de junio de 2014, Maggie Acevedo Sepúlveda y otros (recurrentes) presentaron una *Moción Informando Sentencia del Tribunal Supremo Solicitando Cumplimiento de Sentencia y Otros Asuntos*.[2] Solicitaron, además del cumplimiento de dicha *Sentencia*, que se ordenara al Dpto. de Salud someter evidencia documental de la fecha en que se vendió el último centro u hospital del mencionado departamento y evidencia del sueldo y beneficios marginales al que tenían derecho.

Por su parte, el 8 de julio de 2014, el Dpto. de Salud presentó una *Oposición a Moción Informando Sentencia del Tribunal Supremo Solicitando Cumplimiento de Sentencia y Otros Asuntos*[3], mediante la cual solicitó ordenar a los empleados cesanteados someter copia certificada de sus planillas de Contribución sobre Ingresos desde el año 1999 para realizar el cálculo de salarios de los empleados.

Luego de múltiples trámites procesales, el 31 de marzo de 2016, la CASP emitió una *Orden*[4] en la que, entre otras cosas, dispuso que la fecha de venta del último hospital del Dpto. de Salud a intereses privados ocurrió el 6 de noviembre de 2000, a los efectos del cálculo de la paga dejada de percibir por los empleados ilegalmente cesanteados.

---

[2] Apéndice 3 en la Página Núm. 4 de la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el SUMAC.

[3] Apéndice 3 en la Página Núm. 6 de la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el SUMAC.

[4] Apéndice 14 en la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el SUMAC.

En desacuerdo con la referida *Orden,* el 14 de abril de 2016, los recurrentes presentaron una *Moción Solicitando Reconsideración.*[5] Alegaron que todavía no ha ocurrido la venta, arrendamiento, subarrendamiento, cesión o traspaso del uso del último centro u hospital del Dpto. de Salud, ya que este aún cuenta con varios centros y hospitales que ofrecen servicio directo a pacientes alrededor de la Isla. Además, sostuvieron que la *Sentencia* emitida por el Tribunal Supremo contiene ciertas deficiencias que hacen difícil su interpretación, por lo que debía aplicar la doctrina de usar la ley general de manera supletoria, en este caso, la Ley de Personal del Servicio Público, Ley Núm. 5 de 14 de octubre de 1975, según enmendada (Ley Núm. 5-1975).[6]

Adujeron que la intención del Tribunal Supremo fue ordenar el pago de los haberes dejados de recibir desde que fueron cesanteados hasta que confirmaron que las cesantías fueron ilegales. La misma fue declarada No Ha Lugar el 29 de abril de 2016.

Luego de varios trámites procesales, el 15 de septiembre de 2025, la CASP emitió una *Resolución*[7] en la que resolvió, en lo pertinente a la controversia que nos ocupa, lo siguiente:

---

[5] Apéndice 14 en la Página Núm. 9 de la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el SUMAC.

[6] La precitada Ley fue derogada por la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 de 3 de agosto de 2004, según enmendada (Ley Núm. 184-2004).

[7] Apéndice 16 en la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el SUMAC. La CASP señaló que la causa de acción fue objeto de paralización automática, establecida como parte del procedimiento de Quiebra del Gobierno de Puerto Rico, bajo el Título III de la ley federal *Puerto Rico Oversight Management and Economic Stability Act* (Ley PROMESA), 48 USC 2101 et seq. Resaltó, además, que resolvió la presente *Resolución* a base de un *Stipulation and Agreed Order Modifying Discharge Injunction to Permit the Public Service Appeliate Commission to Liquidate Certain Claims Assertive Liabilities Arising out the Acevedo Sepúlveda Litigation,* en el que se determinó que el caso podía continuar en la misma etapa de los procedimientos en que se encontraba, y proceder a una decisión final, con el único propósito de determinar la cantidad del pago dejado de devengar y beneficios que se otorgaron a cada titular de la reclamación. Esto, en conjunto con un *Informe de Oficial Examinador* (Apéndice 16 en la Página Núm. 16 de la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el SUMAC), en el que el Oficial Examinador dispuso, como recomendación a la CASP, pagar los mencionados salarios y beneficios, desde la cesantía hasta la fecha de la venta del último centro u hospital, "en donde la paga adeudada es escasamente un (1) mes, debido a que ese es el periodo de tiempo trascurrido entre la fecha de la cesantía (mediados de octubre de 2000) hasta el 6 de noviembre de 2000 (fecha de la venta del Hospital Regional de Ponce a intereses privados)". (Apéndice 16 en la Página Núm. 28 de la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el SUMAC).

Los salarios y beneficios marginales dejados de devengar por los PROMOVENTES incluidos en el Exhibit A *Timely Proof of Claims Asserting Liabilities Associated with Acevedo Sep[ú]lveda Litigation*, es desde el 15 de octubre de 2000 hasta el 6 de noviembre de 2000. Es decir, desde la cesantía de estos, hasta la fecha de la venta del último centro u hospital, Hospital Regional de Ponce.

En desacuerdo, el 1 de octubre de 2025, los recurrentes presentaron una *Solicitud de Reconsideración*[8], en la que alegaron que el cálculo realizado por la CASP del pago dejado de percibir por los empleados ilegalmente cesanteados, desde el 15 de octubre de 2000 hasta el 6 de noviembre de 2000, era incorrecto. Sostuvieron que todavía no ha ocurrido la venta, arrendamiento, subarrendamiento, cesión o traspaso del uso del último centro u hospital del Dpto. de Salud, ya que este aún cuenta con varios centros y hospitales alrededor de la Isla. Reiteraron, además, su argumento de que la *Sentencia* emitida por el Tribunal Supremo contiene ciertas deficiencias que hacen difícil su interpretación, por lo que debía aplicar la doctrina de usar la ley general de manera supletoria, en este caso, la Ley Núm. 5-1975, *supra*.

Adujeron, también, que el Tribunal Supremo quiso establecer un periodo para el cálculo mayor a cinco años, basado en la opinión disidente de la Honorable Jueza Asociada Rodríguez Rodríguez, quien expresó que "procede la paga atrasada y los beneficios marginales concedidos sólo por un periodo equivalente a cinco años".

El 14 de octubre de 2025, la CASP emitió la *Resolución*[9] que hoy nos ocupa. Mediante dicho dictamen, la CASP declaró No Ha Lugar la *Solicitud de Reconsideración*. Concluyó que del *Informe* utilizado en la primera *Resolución*, se desprende que la última venta fue el 6 de noviembre de 2000. Expresó, además, que la determinación del Tribunal Supremo, aunque no contenía las fechas

---

[8] Apéndice 17 en la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el SUMAC.

[9] Apéndice 2 en la Entrada Núm. 1 del Caso Núm. TA2025RA00321 en el SUMAC.

específicas a considerarse, dejó claramente establecido que la ley que permitía las ventas de los centros de salud fue derogada. Concluyó que no se puede extender el pago hasta el presente, con el argumento de que se quedaron centros sin vender.

Inconforme, el 27 de octubre de 2025, la parte recurrente presentó el recurso de epígrafe y señaló el siguiente error:

> Erró la CASP al interpretar la Sentencia del Tribunal Supremo a los efectos de que el periodo para el cómputo es sólo desde la fecha de efectividad de su cesantía hasta el 6 de noviembre de 2000.

En cumplimiento con nuestra *Resolución* del 29 de octubre de 2025, la parte recurrida compareció ante nos mediante un *Escrito en Cumplimiento de Resolución* el 22 de diciembre del mismo año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

## A

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que cuentan con vasta experiencia y pericia para atender aquellos asuntos que la Asamblea Legislativa les ha delegado. *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 116-117 (2022). Es por ello, que tales determinaciones gozan de una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *J.H.V. v. Negociado de la Policía de Puerto Rico*, res. 12 de diciembre de 2025, 2025 TSPR 139; *Transp. Sonnell, v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank,* supra, pág. 484; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215-216 (2012).

No obstante, la norma antes reseñada tampoco es absoluta. Al respecto, el Tribunal Supremo ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *J.H.V. v. Negociado de la Policía de Puerto Rico*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial. Sobre el particular, detalló lo siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. [Cita omitida] Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *OEG v. Martínez Giraud*, supra.

Bajo este supuesto, la sección 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco rector aplicable

a la revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). De este modo, la intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos que la agencia realizó están sostenidas por la evidencia sustancial que obra en el expediente administrativo, visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, res. el 27 de marzo de 2025, 2025 TSPR 33, citando a *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012); *Rolón Martínez v. Supte. Policía*, supra, págs. 35-36.

Por otro lado, las conclusiones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán dar peso y deferencia a las interpretaciones que la agencia realice respecto a aquellas leyes y reglamentos que administra. *Rolón Martínez v. Supte. Policía*, supra.

En fin, el Tribunal Supremo ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra, pág. 90.

De este modo, el Alto Foro ha expresado que el criterio administrativo no podrá prevalecer en aquellas instancias en que la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue

aprobada la legislación y la política pública que promueve. Así, considera que "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 91.

**B**

En nuestra jurisdicción, los derechos y las obligaciones que han sido adjudicados mediante un dictamen final y firme constituyen ley del caso. *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200 (2020); *Cacho Pérez v. Hatton Gotay* y otros, 195 DPR 1 (2016). Véase, además, *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606 (2000). La doctrina de la ley del caso tiene como fin que los tribunales nos resistamos a reexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y expedito de los litigios, así como promover la estabilidad y certeza del derecho. *Íd.*, págs. 200-201; *Mgmt. Adm. Servs. Corp. v. E.L.A.*, supra, pág. 608. En ese sentido, dicha doctrina aplica a las controversias adjudicadas, ya sea por los foros de instancia, como por los foros apelativos. *Íd.*, pág. 201; *Cacho Pérez v. Hatton Gotay y otros*, supra, pág. 9. Es decir, un dictamen judicial adquiere el carácter de ley del caso al constituir una decisión final en los méritos de la cuestión considerada y decidida. *Íd.*; *Félix v. Las Haciendas*, supra. Por tanto, las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones consideradas y decididas. Así, pues, generalmente, tales dictámenes obligan, tanto al tribunal de instancia como al foro que las dictó, si el caso vuelve a su consideración. *Íd.*; *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19, 29-30 (1971); *Srio. del Trabajo v. Tribunal Superior*, 95 DPR 136, 140 (1967).

No obstante, la doctrina de la ley del caso no es un dogma absoluto o inquebrantable. Por el contrario, cuando la aplicación de la ley del caso es errónea o conduce a resultados patentemente injustos, el tribunal tiene discreción para emplear una norma de derecho distinta. *González v. Merck*, 166 DPR 659 (2009); *Noriega v. Gobernador*, 130 DPR 919 (1992); *Rivera v. Insurance Co. of P.R.*, 103 DPR 91 (1974). En ese sentido, el Tribunal Supremo manifestó en *Srio. del Trabajo v. Tribunal Superior*, supra, pág. 140, que "cuando un tribunal se convence de que la ley del caso establecida es errónea y podría causar grave injusticia, debe de tener el poder de aplicar una norma de derecho diferente con el propósito de resolver el caso que tiene ante su consideración en una forma justa". *Pueblo v. Ríos Nieves*, 209 DPR 264 (2022).

### C

La Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamentales, Ley Núm. 190 de 5 de septiembre de 1996, según enmendada (Ley Núm. 190-1996), permitía la venta, cesión, permuta y enajenación de las instalaciones de salud del gobierno de Puerto Rico a intereses privados.

Sin embargo, la precitada ley fue derogada con la aprobación de la Ley para Prohibir la Privatización de Instalaciones de Salud, Ley Núm. 3 de 1 de enero de 2003, según enmendada (Ley Núm. 3-2003). Esta ley, como parte de su exposición de motivos, dispuso que "[e]s necesario reformular y promulgar nueva política pública cónsona con las necesidades del pueblo puertorriqueño, de forma tal que se garantice el acceso confiable a los servicios de salud". *Íd.* Cónsono con lo anterior, de manera expresa la precitada ley prohíbe la venta de instalaciones de salud a intereses privados. *Íd*, Artículo 16.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte recurrente plantea, en su único señalamiento de error, que la CASP incidió al interpretar la *Sentencia* del Tribunal Supremo, a los efectos de que el periodo para el cómputo es solo desde la fecha de efectividad de su cesantía hasta el 6 de noviembre de 2000.

Luego de un examen sosegado del expediente ante nos, los escritos de las partes y la normativa aplicable, concluimos que el foro administrativo no erró en su determinación. Nos explicamos.

Según se desprende de su *Sentencia*, el Tribunal Supremo, luego de determinar que no procede la reinstalación de los empleados ilegalmente cesanteados, devuelve el caso a la CASP, a los únicos efectos de calcular la paga dejada de percibir, desde que ocurrió la cesantía ilegal de cada empleado, hasta la fecha cuando se vendió el último centro u hospital del Dpto. de Salud.

Asimismo, el Tribunal Supremo establece en su *Sentencia* la fórmula para calcular los haberes dejados de devengar. Tal como lo calculó la CASP, el periodo comienza desde la fecha de la cesantía ilegal de cada empleado y el momento final, para propósitos de dicho cómputo, es hasta la fecha cuando se vendió el último centro u hospital del Dpto. de Salud. Ahora bien, de la referida frase, "cuando se vendió el último centro u hospital[…]", se desprende que la fecha a la que hace alusión el Tribunal Supremo es una que ya ocurrió. Es decir, es un evento pasado, no un evento futuro o incierto. Ciertamente no dispuso una fecha abierta a interpretación, sino que se refiere a un evento ocurrido y que, por lo tanto, lo único que le corresponde a la CASP es realizar el cálculo matemático de la paga dejada de percibir por los empleados.

Además, al evaluar conjuntamente la Ley Núm. 190-1996, *supra,* y la Ley Núm. 3-2003, *supra,* es posible determinar el periodo durante el cual ocurrió la venta, cesión, permuta o enajenación de

instalaciones de salud a intereses privados. Tras llevar a cabo el referido análisis, es posible colegir que ocurrieron, necesariamente, en el intervalo desde el 5 de septiembre de 1996, fecha en que fue aprobada y comenzó a regir la primera ley, y el 1 de enero de 2003, fecha de aprobación y vigencia de la segunda ley. Nótese que la segunda ley derogó la primera.

En el caso ante nos, las cesantías ilegales se llevaron a cabo en el mes de octubre de 2000 y la venta del último hospital, bajo la vigencia de la Ley Núm. 190-1996, *supra*, ocurrió el 6 de noviembre del mismo año.

Cabe destacar que la parte recurrente sostiene que aún no ha ocurrido la venta, arrendamiento, subarrendamiento, cesión o traspaso del uso del último centro u hospital del Dpto. de Salud, para propósitos del cálculo del pago. Sin embargo, bajo ese argumento, procedería un pago calculado hasta una última venta de cualquier centro u hospital bajo en Dpto. de Salud, lo cual sería un hecho futuro e incierto que imposibilitaría un cálculo para la paga dejada de percibir por los empleados cesanteados ilegalmente.

En este caso, según se desprende del *Informe* emitido por el Oficial Examinador de la CASP, el último hospital se vendió el 6 de noviembre de 2000. La mencionada fecha fue el producto de un análisis por parte del Oficial Examinador de múltiples escritos de las partes, varias vistas sobre el estado de los procedimientos y memorandos de derechos preparados y presentados por las partes.

En virtud de lo anterior, colegimos que no erró el foro administrativo al declarar No Ha Lugar la solicitud de reconsideración promovida por la parte recurrente. En su consecuencia, procede confirmar la *Resolución* emitida por la CASP el 15 de septiembre de 2025, en cuanto al periodo de tiempo de salarios y beneficios marginales dejados de devengar por la parte recurrente.

**IV**

Por los fundamentos que anteceden, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones