Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ROSA E. MENÉNDEZ COLÓN<br><br>**Parte recurrente**<br><br>v.<br><br>DEPARTAMENTO DE EDUCACIÓN<br><br>**Parte recurrida** | **TA2026RA00009** | **REVISIÓN ADMINISTRATIVA**<br>Procedente de la Oficina de Apelaciones del Sistema de Educación<br><br>Caso Núm.:<br>**2014-02-0398**<br><br><br>Sobre:<br>**SUSPENSIÓN DE EMPLEO Y SUELDO** |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece ante nos, Rosa Menéndez Colón, en adelante, Menéndez Colón o recurrente, solicitando que revisemos la *"Resolución"* de la Oficina de Apelaciones del Sistema de Educación, en adelante, OASE, notificada el 9 de diciembre de 2025. En la misma, se decretó el cierre y archivo con perjuicio de la apelación instada por la recurrente.

Por los fundamentos que expondremos a continuación, *revocamos el dictamen recurrido.*

### I.

Según sus alegaciones, Menéndez Colón laboró en el Departamento de Educación desde el año 1980 como maestra de escuela elemental. Surge que el 25 de febrero de 2012 fue suspendida de empleo y sueldo por seis (6) meses, por un incidente de agresión física ocurrido con uno de sus estudiantes. El 7 de marzo de 2013 se celebró una vista ante un Oficial Examinador del

Departamento de Educación, en adelante, Departamento o recurrido. Este recomendó la continuación de las medidas disciplinarias en curso. Por estos hechos, la recurrente fue suspendida de su empleo permanentemente mediante misiva fechada el 10 de enero de 2014 de la Oficina del Secretario del Departamento.[1]

Inconforme, el 29 de enero de 2014 Menéndez Colón apeló esta decisión ante la Comisión Apelativa del Sistema de Administración de Recursos Humanos en el Servicio Público, en adelante, CASP. En su petitorio, negó las imputaciones de maltrato, conducta indebida y/o negligencia en el desempeño de sus funciones.[2] Por su parte, el Departamento presentó su *"Contestación a Escrito de Apelación"* el 12 de septiembre de 2014.[3]

El 10 de octubre de 2014, Menéndez Colón solicitó un señalamiento de vista.[4] Luego, el 4 de diciembre de 2014, las partes radicaron ante la CASP el *"Informe de Conferencia entre Abogados con Antelación a la Vista"*. Así, el 16 de diciembre de 2014 la CASP se dio por *"Enterado"*, mediante *"Orden"*.[5]

Ahora bien, surge de las notas recopiladas en el sistema de CASP que, a causa de la inactividad del caso, Menéndez Colón realizó varias gestiones para darle seguimiento al caso. De estas se desprende que en los días ***4 de junio de 2015, 14 de julio de 2015, 25 de enero de 2016, 24 de agosto de 2018, 9 de octubre de 2018, 27 de noviembre de 2018 y 18 de enero de 2019, la recurrente llamó a la CASP para darle seguimiento al estado de su caso***.[6] No obstante, el 24 de enero de 2019, se ordenó el traslado del caso de epígrafe a la OASE.[7]

---

[1] SUMAC Apelaciones, Entrada Núm. 4, Anejo 1.
[2] Apéndice del recurso, Entrada Núm. 4.
[3] *Íd.*, Entrada Núm. 5.
[4] *Íd.*, Entrada Núm. 6.
[5] *Íd.*, Entrada Núm. 8.
[6] *Íd.*, Entrada Núm. 9.
[7] *Íd.*

Así las cosas, el 20 de marzo de 2025, Menéndez Colón radicó una *"Moción en Solicitud de Señalamiento de Vista y Copia del Expediente del Caso"* ante al OASE.[8] Según alegan las partes, el 15 de abril de 2025, la OASE emitió una *"Orden"* concediéndole veinte (20) días a la recurrente para informar si el abogado que aparecía en récord como su representante legal continuaba representándola. Además, ordenó a Menéndez Colón a mostrar causa por la que no debía desestimarse su reclamación por alegada falta de interés.

No habiendo contestado la parte recurrente en el término concedido, la OASE emitió una *"Resolución"* el 9 de diciembre de 2025 en la que desestimó con perjuicio la apelación de Menéndez Colón contra el Departamento. Inconforme, el 8 de enero de 2026 la recurrente presentó una *"Petición de Revisión de Decisión Administrativa"*, en la que hizo los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró la Comisión Apelativa del Servicio Público (CASP) al desestimar el caso sin antes aplicar una sanción económica a la parte recurrente.

> **SEGUNDO ERROR:** Erró la Comisión Apelativa del Servicio Público (CASP) al aplicar la sanción más severa de la desestimación del caso la cual tiene la consecuencia de privar a la parte recurrente de su día en corte.

El 16 de enero de 2026 emitimos una *"Resolución"* en la que concedimos a la parte recurrida hasta el 9 de febrero de 2026 para presentar su posición en cuanto al recurso, conforme a la Regla 63 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 83-84, 215 DPR ___ (2025). Así, llegado el día límite señalado, el Procurador General de Puerto Rico, en representación del Departamento, compareció con su *"Escrito en Cumplimiento de Resolución"*. Perfeccionado el recurso de autos, procedemos a resolver.

---

[8] Apéndice del recurso, Entrada Núm. 10.

**II.**

**A. Revisión Judicial de Decisiones Administrativas**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Tricoche Matos y otro v. Luis Freire*, 2025 TSPR 92, 216 DPR ___ (2025); *Vázquez et al v. DACo,* 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances*, 214 DPR 370, 377 (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". *Id.*

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson, Passalaqcua v. Quirós, Betances,* supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *J.H.V. v. Negociado de la Policía,* 2025 TSPR 139, 216 DPR ___ (2025); *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia

posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *J.H.V. v. Negociado de la Policía,* supra, *Katiria's Café, Inc. vs. Mun. San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Transp. Sonell, v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *Transp. Sonell v. Jta. Subastas ACT*, supra; *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro,* supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Rolón Martínez v. Supte. Policía*, supra, pág. 35.

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAUG, *supra*, establece que serán sostenidas si están basadas en evidencia sustancial contenida en el

expediente administrativo. LPAUG, *supra,* sec. 9675; *J.H.V. v. Negociado de la Policía,* supra. Así, la parte que impugna las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* supra, págs. 88-89; *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág. 128; *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

Por su parte, la LPAUG, *supra,* sec. 9675 dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". *J.H.V. v. Negociado de la Policía,* supra; *Rolón Martínez v. Supte. Policía,* supra, pág. 36. Esta máxima está impregnada en la fábrica del derecho anglosajón, que en virtud de nuestra fusión jurídica con los Estados Unidos de América nos aplica, desde el famoso caso *Marbury v. Madison,* 5 US 137 (1803), en el que se estableció que "determinar cuál es el derecho es, categóricamente, el ámbito y el deber del poder judicial".

A esos efectos, nuestro Tribunal Supremo aclaró recientemente que, a través de la precitada disposición en la LPAUG, supra, el legislador eliminó la deferencia judicial sobre las determinaciones de derecho que realicen las agencias administrativas. *Vázquez et al. v. DACo,* supra. Lo cierto es que "la interpretación de la Ley es una tarea que corresponde inherentemente a los tribunales". *Vázquez el at. v. DACo,* supra.

Así, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la Agencia o si esta actuó de forma arbitraria,

caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021).

**B. Oficina de Apelaciones del Sistema de Educación – OASE**

La Ley Núm. 85 de 29 de marzo de 2018, según enmendada, conocida como "Ley de Reforma Educativa de Puerto Rico", se aprobó con el propósito de fijar la nueva política pública del Gobierno de Puerto Rico en el área de educación; revisar y desarrollar, mediante consenso y estudio crítico-reflexivo-investigativo, el nuevo marco filosófico que fundamentará el sistema de enseñanza en Puerto Rico. Exposición de Motivos de la Ley Núm. 85 de 29 de marzo de 2018. Mediante este estatuto se creó la OASE como la entidad encargada de revisar las determinaciones finales relativas a los asuntos del personal del Departamento de Educación. Para instrumentalizar el articulado de la ley citada, se aprobó el Reglamento de la Oficina de Apelaciones del Sistema de Educación, Reglamento Número 9099, en adelante, Reglamento Núm. 9099, aprobado el 29 de mayo de 2019, el cual, dispone que su propósito es "establecer el proceso que debe seguirse para la presentación de una apelación ante la Oficina y el adecuado manejo y trámite de dicho recurso por parte de ésta". Artículo 3 del Reglamento Núm. 9099, *supra.*

En su Artículo 6, el referido Reglamento pormenoriza el proceso de entablar una apelación ante la OASE. Por otro lado, el Artículo 7 del Reglamento Núm. 9099, *supra,* establece los deberes y las funciones del Director de la OASE. Entre estas, se encuentra configurado de manera textual la responsabilidad de "[s]upervisar el recibo, manejo y control de los expedientes y aquellos casos radicados ante la Oficina", "[o]bservar que los procedimientos se realicen salvaguardando las garantías del debido proceso de ley". Artículo 7 (c) y (g) del Reglamento Núm. 9099, *supra.*

### C. Debido Proceso de Ley Administrativo

Tanto en la Constitución del Estado Libre Asociado de Puerto Rico como en la Constitución Federal se consagra el derecho fundamental al debido proceso de ley. Véase, Const. P.R. Art. II, Sec. 7; Const. EE. UU., Emdas. V y XIV, Tomo I; *PVH Motor v. ASG*, 209 DPR 122, 130 (2022); *González Segarra et al. v. C.F.S.E.*, 188 DPR 252, 278 (2013). El debido proceso de ley cuenta con dos vertientes: *la procesal* y la sustantiva. *Katiria's Café, Inc. v. Mun. de San Juan*, 2025 TSPR 33, supra; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Domínguez Castro et al. v. ELA I*, 178 DPR 1, 35 (2010); *Rivera Rodríguez & Co. v. Lee Stowell*, 133 DPR 881, 887 (1993).

El debido proceso de ley, en su *dimensión procesal*, se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *PVH Motor v. ASG*, supra, págs. 130-131; *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012). Cónsono con ello, se han reconocido las siguientes garantías procesales, las cuales conforman el debido proceso de ley en su *vertiente procesal*: (1) la concesión de una vista previa; (2) una notificación oportuna y adecuada; (3) el derecho a ser oído; (4) el derecho a confrontarse con los testigos en su contra; (5) a presentar prueba oral y escrita a su favor; y (6) la presencia de un adjudicador imparcial. *Katiria's Café, Inc. v. Mun. de San Juan*, supra; *PVH Motor v. ASG*, supra, pág. 131; *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010); *Garriga Villanova v. Mun. de San Juan*, 176 DPR 182, 197 (2009). Estas garantías procesales del debido proceso de ley se han extendido a los procesos administrativos. *PVH Motor v. ASG*, supra, pág. 131.

Conforme a lo antes expuesto, la LPAUG, *supra*, incorpora en sus disposiciones los criterios necesarios para asegurar la legalidad de los procesos adjudicativos administrativos. En particular, la Sección 3.1 del aludido estatuto, así como la jurisprudencia interpretativa pertinente, reconocen a todas las partes en un procedimiento adjudicativo las siguientes garantías mínimas del debido proceso de ley en su *vertiente procesal*: a) notificación adecuada de los cargos o querellas o reclamos contra las partes; b) derecho a presentar evidencia; c) derecho a una adjudicación imparcial y; (d) derecho a que la decisión sea basada en el expediente. LPAUG, supra, sec. 9641; *Román Ortiz v. OGPe*, 203 DPR 947, 954 (2020); *Fuentes Bonilla v. ELA et al.*, supra, pág. 395; *Álamo Romero v. Adm. de Corrección,* 175 DPR 314, 329 (2009); *Almonte et al. v. Brito*, 156 DPR 475, 481 (2002); *Rivera Rodríguez & Co. v. Lee Stowell,* supra, pág. 889.

Por lo tanto, el privar de la libertad o propiedad a una persona sin proveer la oportunidad de ser oído es contrario al debido proceso. *Rivera Rodríguez & Co. v. Lee Stowell,* supra.

**III.**

Menéndez Colón recurre ante nos impugnando la determinación de la OASE de archivar con perjuicio la apelación incoada por esta hace aproximadamente **doce (12) años**. Arguye que la decisión de no atender su reclamación es la penalidad más severa y viola el debido proceso de ley que nuestro ordenamiento dispone. Por ello, entiende que procedía la imposición de una sanción, y no la desestimación. Sobre esto último, la parte recurrida se allana. *Le asiste la razón.*

En su dictamen, la agencia recurrida comienza indicando que desde el 29 de enero de 2019, cuando la CASP trasladó el caso de epígrafe a la OASE, no ha existido movimiento procesal alguno.

Luego de que la recurrente radicara una moción ante la OASE solicitando una vista el 20 de marzo de 2025, la referida agencia le ordenó a esta a informar el estatus de su representación legal en un término de veinte (20) días. Además, le ordenó a mostrar causa por la que no se deba "desestimar la presente reclamación por falta de interés", alegando que posterior a la radicación del *Informe de Conferencia con Antelación a la Vista*, han transcurrido "once (11) años de inactividad".

Luego de evaluar detenidamente el expediente, concluimos que la posición de la OASE respecto a la recurrente, y su posterior determinación, elude todo sentido de justicia. A la luz de las responsabilidades que ostenta la agencia recurrida para tramitar las apelaciones en armonía con el debido proceso de ley, y el seguimiento tenaz ofrecido por la recurrente, nos vemos enteramente compelidos a concluir que la OASE erró. Entendemos que la OASE se equivoca en su apreciación del transcurso de los ahora doce (12) años desde la tramitación de la apelación en cuestión.

Al momento en que las partes presentaron el Informe, los procedimientos seguían su curso con normalidad. Luego de la presentación del mismo, procedía el señalamiento de Vista por parte de la CASP. No obstante, *esto último nunca se hizo.* Aun así, existe prueba documental de las múltiples llamadas que durante los años la recurrente hizo para darle seguimiento al estatus de su apelación. En vista de lo cual, no podemos concluir que hubo desinterés por parte de Menéndez Colón, máxime cuando es ella quien indujo el primer señalamiento de la OASE, a través de su moción para solicitar señalamiento de vista.

Como vimos previamente, las garantías del debido proceso de ley se extienden a los procesos administrativos, cuando hay algún interés propietario. Como es sabido, los maestros del Estado tienen,

en efecto, un interés propietario sobre su empleo. Por eso, las salvaguardas constitucionales que marchan a favor de una adjudicación justa, imparcial, con la oportunidad de ser oído y confrontar prueba, deben ser aseguradas por la maquinaria administrativa que la atienda. Luego de evaluar el expediente y los registros que evidencian el interés de la recurrente en apelar su despido, quedamos irremediablemente convencidos que Menéndez Colón ha sufrido una intolerable vulneración al debido proceso de ley.

Luego que la recurrente estuvo rogando la instrucción de las agencias administrativas correspondientes por más de diez (10) años, nos resulta irrazonable e intransigente castigarla con la más severa de las sanciones luego de que esta incumpliera con una simple instrucción que no versaba sobre la controversia. Atribuirle a Menéndez Colón desinterés en su caso, soslaya de manera vergonzosa los esfuerzos documentados de esta durante una década para reanimar su caso.

Ambas partes aducen que el incumplimiento de la recurrente justifica la imposición de sanciones, en lugar del archivo. Sin embargo, a tenor con el sentido de justicia que guía nuestra decisión hoy, esta Curia revoca el dictamen impugnado, y se rehúsa a aplicar las sanciones aludidas. La OASE deberá atender finalmente la apelación de la recurrente en sus méritos, con la premura y diligencia que no se le ha conferido en diez (10) años.

**IV.**

Por los fundamentos antes esbozados, revocamos la *"Resolución"* recurrida y devolvemos el caso de autos a la OASE para la continuación y adjudicación final del mismo.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del

Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones